STATE, ex rel JULIA H. NORRIS, C. C. PARKER, and A. R. BERGER, Composing the Civil Service Board of the City of Tampa, v. R. E. L. CHANCEY, as Mayor of the City of Tampa, DR. J. R. McEACHERN, as head of the Health Department of Tampa, C. J. WOODRUFF, as Chief of Police of the City of Tampa; A. J. WHITE, as Chief of Fire Department of the City of Tampa.

176 So. 78.

Opinion Filed September 3, 1937.

*C. C. Parker* and *E. B. Drumright,* for Relators.

*Alonzo B. McMullen* and *Ralph A. Marsicano,* for Respondents.

Brow, J.—This is a case of original jurisdiction. The members composing the Civil Service Board of the City of Tampa filed a petition in this Court for the issuance of a writ of mandamus directed to R. E. L. Chancey as Mayor of said city and to Dr. J. R. McEachern as head of the Health Department commanding them to forthwith restore E. S. Chastain to his employment as Inspector in the Health

Department, and also commanding them to remove from employment in said department J. L. Young and three other named persons; and also commanding the Mayor and C. J. Woodruff as Chief of Police to remove from employment in the Police Department W. P. Bolesta and four other named persons; and commanding said Mayor and A. J. White as head of the Fire Department to restore to employment in said service Carl Schultz and three other named persons.

On this petition the Court issued a rule *nisi* to the respondents and the other persons named in the petition to appear and show cause why the writ should not issue as prayed, and the several respondents filed motions to discharge the rule, upon which argument was had, and upon consideration thereof the Court directed the issuance of an alternative writ of mandamus, the command of which was substantially the same as that asked for in the original petition, and in said writ the respondents were ordered to carry out the command, or appear on a designated date and show cause why they refused so to do, and why peremptory writ should not be issued as prayed.

On the date designated in the alternative writ the respondents appeared by their counsel and filed motions to quash the alternative writ, one motion being filed by the Mayor and another by the other two respondents; whereupon the relators filed a motion for the issuance of the alternative writ, alleging that the sufficiency of said writ had already been determined by reason of its issuance after the argument on the rule *nisi*, and that by now appearing and filing motions to quash the alternative writ, the respondents must be held to have asserted the only defense they have, which had been determined adversely to them by the issuance of the alternative writ.

So, the case is now before us on the alternative writ, the

motions of respondents to quash the same, and the motion of relators for the issuance of the peremptory writ. In view of the importance of the questions involved, and the fact that no written opinion has been prepared in connection with the prior orders of the Court in this case, we deem it proper to consider and discuss all meritorious questions raised by motions now before us, even though some of the grounds thereof may have been incorporated in previous motions already acted upon. The case is still *in fieri,* and the Court still retains complete jurisdiction of the same, and may, if it sees fit, not only consider and dispose of the present motions, but it may, if deemed necessary, reconsider and vacate any previous preliminary order which it has made.

The first question arising here is whether the Civil Service Board of the City of Tampa can resort to the use of a writ of mandamus directed to other officers of said city for the purpose of compelling official action on their part in a case of this kind.

In the case of Pennock, *et al.,* v. State, *ex rel.* Hood, *et al.,* as Trustees of Special Tax School District, 61 Fla. 383, 54 So. 1004, this Court held that:

"I.   Mandamus will not lie to compel action upon the part of public officers, when it is apparent that the relator has no direct interest in the action sought to be coerced, and that no benefit can accrue to him from its performance. To authorize the relief, it must clearly appear that there is a specific ministerial duty, in the performance of which the applicant for relief is directly interested. The writ will not be granted merely for the purpose of defining the powers and duties of public officers, independent of any direct personal interest upon the part of him who seeks the relief."

In that case, an alternative writ of mandamus was sued out by the Special Tax School District and certain parties as Trustees of said District against Pennock and others composing the Board of Public Instruction and one Harris as County Superintendent to compel the issuance of a warrant to certain attorneys who had been employed by and had rendered certain services to said District, and whose bill for such services had been approved by the District Trustees. This Court held that:

"The purpose of the writ here is to coerce the issuance to third persons, who are not relators, of a warrant in payment to such third persons of an indebtedness alleged to be due to such third parties, in which claim the relators have no sort of interest whatsoever, and the motion to quash the alternative writ should have been granted upon this ground."

This case was followed by Wiecking v. Coachman, et al., 66 Fla. 49, 62 So. 898. In that case the Board of County Commissioners had ordered a warrant to issue to certain attorneys as their fee for services rendered, and the County Clerk, as ex officio Clerk of the Board refused to issue and sign the warrant. The Board resorted to a writ of mandamus to compel him to do so. This Court held that after the Commissioners had ordered the warrant to issue, the direct pecuniary interest in the perfecting of that warrant was in those named as its beneficiaries, and that the county should not be put to the expense of employing counsel and incurring a liability for cost in a mandamus proceeding which was for the primary benefit of private individuals. The earlier case of Holland v. State, ex rel. Duval County, 23 Fla. 123, 1 So. 521, to which we will presently refer, was distinguished on the ground that the Holland case involved "the continuing care and management of county convicts,

a peculiarly public duty and not a private right," whereas the Wiecking case was held by the Court to be "one merely to enforce a private demand and the interested parties are the ones who hold the claim, and to whom the warrant, if legal, should be issued, and as to whom an unfavorable judgment would be *res judicata.*"

The Pennock case, *supra,* has also been followed in several later cases including the case of State, *ex rel.* Hanna, v. Lee, 124 Fla. 588, 169 So. 220.

But in the case of Holland v. State, 23 Fla. 123, 1 So. 521, this Court announced the broad general principle that "where a statute imposes a power or duty upon a board of officers, and to execute such power or perform such duty it becomes necessary to obtain a writ of mandamus, they may apply for the same." That was a case where Duval County, by its Board of County Commissioners, brought mandamus to compel the sheriff to deliver to the Board certain prisoners under a statute which provided that the several counties of the State might employ all persons imprisoned in the jails under sentences of conviction for crime, or for failure to pay fine and costs imposed upon conviction, at hard labor upon the streets, roads, bridges and public works in such counties, and to make all needful rules and regulations for their safe keeping and discipline while so employed. It was also held in that case that the County Commissioners, and not the Attorney General, were the proper applicants for a mandamus against a sheriff obstructing the enforcement of said statute, because the duty or power of enforcing the statute devolved expressly upon the Board of County Commissioners of the county in whose jail the convicts were imprisoned.

In the case of State, *ex rel.* Guyton, v. Croom, 48 Fla. 176, 37 So. 303, it was held that the clerk of the Circuit

Court was a proper party as relator in a mandamus proceeding to require the Comptroller to honor a requisition by such Clerk for the amount of money necessary for the payment of juror and witnesses to be paid by the State at any regular or special term of the Circuit Court under the provisions of the statute authorizing the clerk to maks such requisition and making it the duty of the Comptroller to honor the same. The case of Holland v. State, *supra,* was quoted and cited with approval.

The Holland case was also quoted from and cited with approval in the case of State, *ex rel.* White, *et al.,* v. MacGibbon, 79 Fla. 132, 84 So. 91, in which the principle enunciated in the Holland case was applied to a somewhat different situation. In that case the County Commissioners had ordered a warrant drawn in favor of one Hall, which warrant represented the purchase price of real estate to be acquired by such commissioners from Hall for the county. In that case this Court held that the Board of County Commissioners were proper parties relators in mandamus proceedings to compel the Circuit Clerk, as *ex officio* clerk of the Board, to draw and sign a warrant ordered by the Board on the county funds with which to pay for and procure a title to a parcel of land purchased for the county by such board from which to procure material for the construction of county roads, even though such warrant was to be drawn in favor of a third party, the vendor of the land. The Court held that under these facts the County Commissioners "were directly interested in the making and payment of such warrant.'"

It was also held in the latter case that the headnote in Wiecking v. State, *supra,* was misleadingly broad and should be qualified so as to read as follows:

"The County Commissioners are not the proper parties

to mandamus the clerk to draw a warrant ordered by them in favor of private parties, unless such commissioners' are *officially directly interested* in the payment of such warrant." (Italics supplied.)

It thus appears that this Court has recognized the soundness of the principle that public officers or boards of officers may maintain proceedings in mandamus to compel other officers to perform ministerial acts which come within the scope of their supervision or which are necessary to be performed in order to enable such officer or board of officers to perform its own duty. This principle appears to be generally recognized in other jurisdictions. See 38 C. J. 836.

The question arises, does the case as made by this petition and alternative writ of mandamus bring this case within the principles thus enunciated and sustain the contention of the members composing the Civil Service Board that they are proper parties relators in this proceeding? The alternative writ reads in part as follows:

"First:—That Relators constitute the Civil Service Board of the City of Tampa a Municipal Corporation under Charter provisions providing as follows:

" 'Section 47 of the City Charter provides:

" 'The Board of Representatives shall appoint three electors of the city as a Civil Service Board, to be appointed to serve for six years and until their successors have been appointed and qualified. The present members of the Civil Service Board shall continue to discharge the duties of their office until the appointment and qualification of their successor or successors. The members of said board shall not hold any further officers. Any vacancy shall be filled by the Board of Representatives for the unexpired term. Immediately after its organization the board shall elect a chairman and shall employ a Chief Examiner, who shall

also act as Secretary, and said board may employ such other subordinates as may by appropriation be provided for. The Board of Representatives shall fix the compensation of the members of the Civil Service Board and of the Chief Examiner and the employees of said Board.'

" 'Section 48 of the City Charter provides:

" '*All employees* of the City of Tampa other than the heads of the departments, and heads of bureaus, *shall be as nearly as practicable selected by competitive examination* to be held by and under the direction of the Civil Service Board herein provided for, and the said Civil Service shall cause to be prepared *uniform rules and tests for the several departments of the city and shall cause examinations to be held from time to time* as necessity therefor shall appear to them. In the selection of employees said Civil Service Board shall give preference among qualified applicants to residents of the City ·of Tampa. *No employees of the City of Tampa selected upon competitive examination as aforesaid shall be discharged from his employment except upon charges preferred against him by the Mayor and filed with said board, and then only upon a majority vote of the board.* Provided, however, that employees of the City of Tampa, qualified merely as workmen or laborers may be employed and discharged by the Mayor or the several heads of departments. The expenses of the Civil Service Board shall be annually made into a budget estimate to be presented to the Board of Representatives for its approval by the Mayor. The Board shall from time to time as requested by the Board of Representatives make its report to said Board of the conduct of its affairs for its approval.' (Italics supplied.)

"And that each of the above sections are now in full

force and effect as the basic laws for the government of said city.

"SECOND:—That under authority of the foregoing Charter provisions, the Civil Service Board therein provided for, heretofore on the 14th day of February, A. D. 1932, adopted Rules and Regulations governing *employment, suspensions and discharges* of employees of the said City of Tampa, and which said Rules and Regulations are duly approved and adopted by the Commission of the City of Tampa then lawfully authorized as the governing and legislative body of the said City of Tampa, and thereby became effectual as ordinances of the said city and so still remain in full force and effect; the said adoption being as follows: 'The foregoing general rules and regulations governing the Civil Service Board of the City of Tampa, upon due presentation and consideration by the Commissioners, are hereby approved and adopted, this 14th day of February, 1922, and declared to have the full force and effect of an ordinance of the City of Tampa.'

" 'CHARLES H. BROWN,
" '*Mayor Commissioner.*

"'ATTEST: William E. Duncan, *City Clerk.*
(SEAL)

"THIRD:—That Rule 10 of the said Civil Service Rules and Regulations provides:

" 'In the event it shall hereafter become necessary to reduce the number of employees in the Classified Service in any department of the City of Tampa, whether through lack of funds or an unnecessary number employed for the work of such department, any reduction made in the number of employees shall be made from those last receiving employment, and a report thereof, in writing, made to the

Civil Service Board. And in the event it shall thereafter become necessary to obtain additional employees for a like service in such department, such employee previously suspended shall be, to the number required, reinstated without examination unless such employees shall refuse reinstatement, in which event new employees may be obtained through the Civil Service from the eligible register. Provided, however, that this Rule may be waived by the Board whenever it shall be made to appear to the Board that any employees have so exceptionally and efficiently performed their duties that the best interests of the City would be served by preferring such employee or employees.'

"FOURTH:—That Rule 12 of the said Civil Service Rules and Regulations provides:

" 'Any employee of the City of Tampa in the Classified Service who has been suspended, reduced in rank or dismissed from the service may appeal to the Civil Service Board, such appeal to be made within five days from date of such suspension, reduction or dismissal, and the Board shall proceed within ten (10) days to hear such appeal, notice of the time and place of such hearing to be given to such person, and also to the head of the department in which he was employed and to his immediate superior. The Board will, on application, furnish to such person a copy of the charges preferred against him, and the decision of the Board shall in all cases be final.'

"FIFTH:—That while there are no specific Charter provisions in respect to lay-offs and suspensions of the employees of the City of Tampa, neither is there a commitment of such powers to the Mayor or the Heads of the several departments of the City of Tampa under Charter provisions. That under Section 7, Paragraph 2, of the Charter of the City of Tampa, it is provided as follows:

" 'Except as herein otherwise specifically provided, to appoint and to remove and fix the compensation of all officers and employees of the City, the employment and compensation of whom is not otherwise provided for herein, all such appointments to be made upon merit and fitness alone, and in accordance with the Civil Service requirements as nearly as possible.' ·

"SIXTH:—That under the Civil Service provisions for the regulation of employment by organized public bodies, particularly Municipal Corporations, two essential principles are involved:

"(a)—Rules, Regulations and Classifications under which prospective employees are tested for fitness before such employment.

"(b)—Furnishing security for such employee in the tenure of his employment in order to attract competent individuals to engage therein as a regular vocation, freed from the uncertainties of political control, which purposes are within common knowledge and of which the Court will take judicial notice.

"SEVENTH:—That in pursuance of the above Charter provisions and Civil Service Rules the Civil Service Board of the City of Tampa have made due classifications of employees of the Health Department, of the Police Department, and of the Fire Department, and other Departments of the City Government, and fixed standards of fitness for such employees. That a Roster of individuals who have successfully passed the tests required in such classifications have been prepared and maintained and that the said Civil Service Board now maintains a Roster of such employees engaged under the Civil Service Rules, and waiting lists of those who have successfully passed examination awaiting employment.

"Eighth :—That on the 6th day . of July, A. D. 1936, there were in the employ of the Health Department of the City of Tampa and employed under Civil Service provisions the following individuals, together with dates of their employment, within the Classification known as inspectors:

D. L. Haddon _____ Employed April     1924
E. S. Chastain _____ Employed May   4, 1926
E. C. Critchlow _____ Employed Dec.   5, 1931
S. P. Connell _____ Employed April 16, 1932
M. H. Sweat _____ Employed Mch. 13, 1933
Harry Denegre _____ Employed. May   6, 1933
J. W. Scalley _____ Employed July 16, 1934
F. F. Brannan, Jr. _____ Employed Dec.   1, 1935

"Ninth :—That under date of July 2nd, 1936, due E. S. Chastain (or Elzie S. Chastain), was discharged or suspended from employment in said Department under Order of the respondent, R. E. L. Chancey as Mayor of the City of Tampa, and purporting . to be on recommendation of the respondent, J. R. McEachern, Head of the Health Department, by a notice or order following:

" 'Curtailment of Service
" 'Tampa, Florida, July 7, 1936.

" 'I, R. E. L. Chancey, Mayor of the City of Tampa, do hereby dispense with services of Mr. Elzie S. Chastain as Health Inspector in the Health Department of the City of Tampa, Effective Midnight July 7, 1936. Salary $109.00 per Month.

" 'R. E. L. Chancey,
" '*Mayor, City of Tampa.*'

"Recommended by J. R. McEachern, Head of Department.

"And that the said E. S. Chastain has not since been permitted to resume his employment.

"TENTH :—That in the attempted lay-off or removal of the said E. S. Chastain, Rule 10 and Rule 12 of the Civil Service Board were wholly disregarded in that there remain within the employment of the said Department:

```
E. H. Critchlow _____Employed  Dec.   5, 1931
S. P. Connell _____Employed  April 16, 1932
M. H. Sweat _____Employed  Mch. 13, 1933
Harry Denegre _____Employed  May   3, 1933
J. W. Scalley _____Employed  July 16, 1934
F. F. Brannan, Jr. _____Employed  Dec.   1, 1935
```

"Inspectors who have been employed subsequent to the said E. S. Chastain.

"That the said E. S. Chastain filed with the Civil Service Board his complaint of which the Civil Service Board took cognizance, and after full hearing, of which the respondents had due notice, ordered the reinstatement of the said E. S. Chastain by order following:

" 'After investigating the laying off of E. S. Chastain on July 7, 1936, Mr. Chastain having been employed in the Health Department of the City of Tampa since May 4, 1926, his seniority being the greatest of any employee in the Department doing Inspection work, the Civil Service Board does not sustain the action of the head of the Health Department in laying off Mr. Chastain, as it has not been made to appear to the Board that any employees have so exceptionally and efficiently performed their duties that the best interests of the City would be served by preferring such employees to Mr. Chastain.

" 'The Civil Service Board, therefore, finds that Mr. Chastain should be restored to his former employment, and the

head of the Health Department is requested to comply with this order.

" 'The Civil Service Board also requests that if it is necessary to further reduce the force to come within the budget that one of the last men employed be laid off.

" 'Dated: July 17, 1936.'

"But that nevertheless the said respondents have refused and do now refuse to permit the said E. S. Chastain to return to work or receive the compensation to which he is entitled.

"ELEVENTH:—That in the dismissal of the said E. S. Chastain, the respondents, R. E. L. Chancey as Mayor and J. R. McEachern as Head of the Health Department, have assigned no reason other than reduction in number of employees to curtail expenses, either to him or to the Civil Service Board, while retaining employees of junior rating, and that such action has been actually based upon personal and political preferences, all of which are in violation of the basic principles of the Civil Service. That it is pretended by the said respondents that Rule 10 of the Civil Service is not binding upon them and they have the power in the reduction of the employees of the City of Tampa, in order to curtail expense of government, to make selection of employees to be retained without respect to the Civil Service Rules and Regulations relating to seniority of employment, which pretense if allowed to prevail would be wholly destructive to the Civil Service provisions of the City of Tampa, and would place in the power of the Chief Executive and Heads of Departments, by subterfuge, to defeat the purpose of the Civil Service, which the citizens of Tampa have secured by Charter provisions."

Then the writ goes on to allege that there were at the time the writ was sued out, in the employ of the City of

Tampa, in lines of employment within the classified services of the Civil Service Board, in the Police Department of said City, of which respondent C. J. Woodruff is the Chief, one W. P. Bolesta and four others; and that there were in the employ of the Health Department of the City of Tampa, of which respondent J. R. McEachern is the Head, one J. L. Young and three others, who had been recently employed and retained in the services of said City without Civil Service examination or certificate of confidence from the Civil Service Board, notwithstanding that there is and was at the time of such employment competent individuals to fill such positions who had passed the Civil Service examination and had been certified to said Departments, and that such employments and retentions had been made and maintained by the respondent Chancey as Mayor under his claimed executive powers, and in total disregard of Section 48 of said City Charter; that said respondents are engaged in a constant practice of ignoring the Charter provisions of the City of Tampa in respect of the Civil Service and in disregard of the Civil Service Rules.

The alternative writ sets out certain correspondence between the Civil Service Board and the Chief of the Fire Department and the Chief of the Police Department in support of these allegations. Thus, there is a letter to respondent White, Chief of the Fire Department, stating that the Board had been advised that it would be necessary to drop five men from the roll of the Fire Department, and calling the attention of the Chief, White, to Rule 10 of the Civil Service Rules and also calling his attention to the fact that the last five men added to his department were Vernon G. Blont and four others.

A similar letter was written to respondent Woodruff, Chief of the Police Department, and calling his attention

to the fact that the newly adopted budget would require the reduction of the Police force to the extent of ten patrolmen and two stenographers, and after quoting the applicable Civil Service Rule (that any reduction made in the number of employees should be made from those last receiving employment, and that in the event that it should thereafter become necessary to obtain additional employees for a like service in such department such employees previously suspended should be, to the number required, reinstated without examination, unless such employees should refuse reinstatement, in which event new employees should be obtained through the Civil Service from the eligible registry), said letter notified said Police Chief of the names of ten persons employed in his Department, not under Civil Service Rules, and who could not be retained and men under Civil Service laid off. To this letter from the Civil Service Board the Chief of Police replied that he was submitting the list of the names of the men whom he proposed to drop, and requested permission to disregard the Civil Service rating and seniority, on the ground that he could thus better serve the public and the City of Tampa more efficiently, and stated that as a reason for retaining some of them who had served a shorter period than others, that he could operate his department more efficiently and with better discipline by so doing than if he was required to follow the Civil Service ratings and seniority. It is then alleged that the list of employees thus designated by the respondents C. J. Woodruff and A. J. White with regard to their respective departments were discharged from the respective services, notwithstanding the protest of the Civil Service Board, and the remainder retained in the employ of said respective departments, all of whom had junior ratings as compared with those discharged. That the lan-

guage of the communications received from the Chiefs of these departments disclosed a common intent to defeat the Civil Service Rules and Regulations.

We will not go into all of the allegations of the alternative writ, with reference to the other departments involved, but to what has been quoted we will add the following paragraph, with reference to the suspension, and reinstatement ordered, in the Health Department:

"FOURTEENTH: Relators show that by reason of the premises they are hampered in the discharge of their continuing duties as the Civil Service Board of Tampa, and that unless the respondents be compelled to yield obedience to the Order of reinstatement of the said E. S. Chastain and employ only those who have been certified as competent by the Civil Service Board, and to comply with the Rules and Regulations of the Civil Service Board, the authority of Relators as the Civil Service Board of Tampa will be brought to naught and its continuing functions as a body, charged with the duty of maintaining a Civil Service system in the City of Tampa made nugatory, and the people of the said City deprived of the benefits of a Civil Service, which they have by Charter provisions sought to obtain."

We have given careful consideration to the very able argument of counsel for the respondents to the contrary, but we have reached the conclusion that the allegations of the alternative writ are *prima facie* sufficient to show that the relators here, being the persons composing the Civil Service Board of the City of Tampa, had the right to act as relators in bringing this mandamus proceeding, it appearing *prima facie* from such allegations that they came within the operation of the principle enunciated in Holland v. State, *supra,* to the effect that where a power or duty is imposed by law upon a board of officers, and to execute such power

or perform such duty, it becomes necessary to obtain a writ of mandamus, they may apply for the same. They are also, under such allegations, "officially directly interested" within the meaning of those words as used in the MacGibbon case, *supra.* See also in this connection Fla. Central, etc., R. Co. v. State, 31 Fla. 482, 13 So. 103. 20 R. A. 419.

But there are other questions raised by the motions to quash.

One of the grounds of said motions is that the alternative writ does not show that the Civil Service Board was vested by the City Charter or otherwise with authority, either express or implied, to adopt and put into effect Rule 10, hereinabove set forth in full. We think this contention is well founded. Relators argue that the Board had such authority under Section 48 of the City Charter, and implications to be derived therefrom. But said Section 48, hereinabove quoted, merely grants a restricted rule making power. It provides that all employees of the City, other than the heads of departments and bureaus, shall be as nearly as practicable, selected by competitive examinations to be held by and under the direction of the Civil Service Board, and that the Civil Service Board shall cause to be prepared uniform rules and tests for the several departments of the city and shall cause examinations to be held from time to time as necessity therefor shall appear to them. By thus expressly vesting the rule making power for the particular purpose mentioned, without mentioning any other purpose, we would hardly be authorized to hold that the Board had implied power under said Section 48 to adopt Rule 10 and put it into effect by virtue of the power vested in the Board by Section 48 alone. State v. L. & N. R. Co., 57 Fla. 526, 49 So. 39; State v. Atlantic Coast Line R. Co., 50 Fla. 465, 54 So. 394; Bailey v. Van Pelt, 78 Fla. 337,

82 So. 789; State, *ex rel.* Mason, v. Rose, 122 Fla. 413, 165 So. 347; 29 R. C. L. 978, 981, 1091.

However, Rule 10 and other rules adopted in February, 1932, by the Civil Service Board, including Rule 12, were, so it is alleged in the alternative writ, duly approved and adopted by the then lawfully authorized governing body of the City of Tampa, and thereby became effective as ordinances of the said City of Tampa, and so still remain, in full force and effect. Nothing appearing to the contrary, the allegations of the alternative writ are therefore sufficient to show that Rules 10 and 12 of the Civil Service Rules were in full force and effect at the time the occurrences alleged in the alternative writ took place and were binding upon all of the officers of said City, unless Section 7 of Paragraph 2 of the City Charter would have the effect of exempting the mayor from the operation of said rule. It is contended by counsel for the respondents that the Mayor of Tampa is by the charter vested with the power to appoint and remove employees, and that he has full power to remove employees of the City for purposes of economy without any regard whatever to the Civil Service Rules. We cannot take judicial knowledge of the provisions in said City Charter, which was adopted under the "home rule" statute, and does not appear in the Acts of the Legislature in so far as we are informed, and at this juncture of this proceeding we can only take cognizance of those portions of said City Charter which are brought before us by the pleadings in this case.

It will have been observed that the 5th paragraph of the alternative writ alleges that there are no specific charter provisions in respect to lay-offs and suspensions of the employees of the City of Tampa and that neither is there any commitment of such power to the Mayor or the heads of

the several departments of the City under charter provisions, and Section 7 of Paragraph 2 of said charter provides as follows:

"Except as herein otherwise specifically provided, to *appoint* and to *remove* and fix the compensation of all officers and employees of the City, the employment and compensation of whom is not otherwise provided for herein, all such *appointments* to be made upon merit and fitness alone, and in accordance with the Civil Service requirements as nearly as possible." (Italics supplied.)

We take it from this quoted portion of the charter that *if* the Mayor is authorized to appoint and to remove and fix the compensation of all officers and employees of the City, whose employment and compensation are not fixed by the charter, all such *appointments* must be made upon merit and fitness alone and in accordance with the Civil Service requirements as nearly as possible.

If, as stated in repsondents' brief, this extract from Section 7 of the City Charter refers to the Mayor, it would appear that the Mayor is thereby authorized both to appoint and to remove all officers and employees of the City, whose employment is not otherwise provided for in the charter, but Section 48 of the Charter expressly provides that all employees of the City other than the heads of departments and bureaus, shall be, as nearly as practicable selected by competitive examinations to be held by and under the direction of the Civil Service Board, and that no employees, selected upon competitive examinations, as aforesaid, shall be discharged from employment except upon charges preferred against them by the Mayor and filed with said Board and then only upon a majority vote of the Board. Workmen and laborers are excepted from this rule. It will also be noted that said quotation from Section 7 of the City Char-

ter provides that all appointments must be made upon merit and fitness alone, and in accordance with the Civil Service requirements as nearly as possible.

But respondents contend that all the removals from employment, alleged in the alternative writ, were made in pursuance of necessary economy, and that the Civil Service Rules had no appplication to such a situation; that it would be a sad commentary indeed if employees of a municipality could not be removed in the interest of economy or curtailment of service simply because under the Civil Service requirements it was provided that they would only be discharged upon charges preferred. This contention seems to be supported, in the main at least, by the first sentence of Rule 10 of the Civil Service Rules, which provides that when it becomes necessary to reduce the number of employees in the classified service in any department of the City, whether through lack of funds or an unnecessary number employed for the work of such department, it may be done, but it further provides that any reduction made in the number of employees shall be made from those last receiving employment, and a report thereof in writing made to the Civil Service Board.

Indeed, counsel for the relators in their brief say that they do not question the right of governmental authority in Tampa to make reduction of the number of employees within the classified service where economy demands it or where a line of service is no longer necessary, but that the question here involved is in respect to a reduction in the number of employees in a department while retaining other employees with like jobs.

In 43 C. J. at page 679 it is said:

"The statutes requiring a hearing or opportunity to explain apply only where the removal is for incompetency,

misconduct, or other reason personal to the individual removed, and not where the removal is made in good faith from motives of economy, as where the services are no longer needed, or there is not a sufficient appropriation to pay salaries, or the office or position is in good faith abolished, but to make a compliance with the statutes unnecessary, the office must be abolished in good faith. The full performance of all conditions established by the civil service laws is an essential prerequisite to the jurisdiction of the removing body over the subject matter of the removal of an officer, and where there is no substantial compliance with the statutory procedure, an order of removal is a nullity."

Our conclusion from these sections of the City Charter and of the Civil Service Rule set forth in the alternative writ, is that whenever it becomes necessary to reduce the number of employees in the classified service in any department of the City of Tampa, whether demanded by necessary economy or by it becoming apparent that an unnecessary number are employed in the work of such department, such reduction in the number of employees may be made, without resorting to the preferment of charges by the Mayor and filing with the Board, and securing a majority vote of the Board, as must be done in all other cases; but where such removals are necessary to be made for purposes of economy, or where an unnecessary number are employed in the work of a department, and it shall thereafter become necessary to obtain additional employees for a like service in any such department or departments in the classified service, employees previously thus removed or suspended, shall be, to the number required, reinstated without examination, and in case any such employees shall refuse reinstatement, a new employee to fill his place should be obtained from the eligible register of the Civil Service, as

provided in Rule 10 above quoted, unless this rule be waived by the board for the reason set forth in said rule. As above stated the city charter expressly limits the power of *appointment* to be exercised in conformity with civil service requirements.

It appears therefore that the removal of old employees and the appointment of new employees from the three departments of the City of Tampa as charged in paragraphs 8 to 14 inclusive of the petition and alternative writ, in the form and manner therein set forth, was not authorized by the provisions of the city charter and Civil Service Rules hereinabove quoted, but it is not made clear by either the petition or the alternative writ just what authority the heads of departments who are made parties respondent thereto, had in respect to employment or suspension of employees in their respective departments. Nor is it made clearly to appear in whom the actual authority to appoint and remove officers and employees of the city is vested. It does not even clearly appear that the Mayor is vested with that authority. It does appear that these heads of departments assumed to exercise authority in that regard, but this Court cannot command a City officer to perform an act unless it clearly appears that it is his plain legal duty to perform it. See State, *ex rel.* West, v. Florida Coast Line, etc., Co., 73 Fla. 1006, 75 So. 582. That there must have been some uncertainty in the minds of counsel for the relators themselves as to the powers of the Mayor and heads of departments respectively is shown by the fact the alternative writ as drawn commands the Mayor and the head of the Health Department both to forthwith restore E. S. Chastain to his employment as inspector in the Health Department of said City and to remove from employment in said Department one J. L. Young and three others, and similar commands

are made with reference to the two other departments. This question is raised by the motions of the several respondents to quash the writ and we think that this ground of said motions is well taken.

It is also pointed out by the respondents that the petition and writ allege that under the authority of the quoted charter provisions, the Civil Service Board, on February 14, 1932, adopted rules and regulations, which rules and regulations were adopted by the Commission of the City of Tampa on February 14, 1922. We have disregarded this ambiguity, because it is further alleged in that connection that such rules were adopted by the legislative body of the city and became effective as ordinances of said city, and that they still remain in full force and effect as such. However, the fact that the allegations of the petition and writ show that such adoption by the city was made ten years before the Civil Service Board had adopted such rules, there remains an ambiguity which is out of place, when unexplained, in an alternative writ of mandamus, which should always be explicit in its allegations.

For the reasons above pointed out the motions to quash the alternative writ of mandamus are hereby granted, but with leave to the relators to amend their alternative writ, as they may be advised, within fifteen days from the date of this order.

TERRELL, BUFORD and CHAPMAN, J. J., concur.