STATE *ex rel.* GEORGE B. MCCANTS V. CITY OF WEST PALM BEACH, a Municipal Corporation, and JOHN B. COOK, *et al.*

3 So. (2nd) 158
En Banc
Opinion Filed May 30, 1941
Rehearing Denied July 12, 1941

*Jordan Johnson* and *John E. Bollinger,* for Plaintiff in Error;

*Paul W. Potter,* for Defendants in Error.

PER CURIAM.—No error clearly appears from a careful study of the record and briefs in this case, therefore, the judgment of the circuit court is affirmed.

BROWN, C. J., WHITFIELD, TERRELL, THOMAS and ADAMS, J. J., concur.

CHAPMAN and BUFORD, J. J., dissent.

CHAPMAN, J. (dissenting).—I am unable to agree to the majority opinion in this case.

On June 22, 1940, George B. McCants filed in the Circuit Court of Palm Beach County, Florida, a petition for an alternative writ of mandamus against designated officials of the City of West Palm Beach. The petition, *inter alia,* alleged that the relator was employed by said city as a fireman on November 6, 1934, and the employment was continuous thereafter until the filing of said petition; that said city had paid the relator regularly for his said services as a fireman

from the date of employment until September 18, 1939, and there is now due him by the City of West Palm Beach his monthly salary for that period of time from and after September 18, 1939, until the date of filing the petition in the lower court.

The Legislature of Florida, during its 1939 session, enacted Chapter 20197, Special Laws of Florida. The Act regulated the employment and the discharge of officers and employees, created a Civil Service Board, provided for election of the officers thereof, and adopted the procedure regulating the trial of members of the Civil Service Board of the City of West Palm Beach. The Act provided a referendum to be approved by the electors of said city before the Act should become effective. The Act was approved by the electors of said city on September 26, 1939, when the same became effective.

The Civil Service membership of officers and employees is fixed and determined by the provisions of the Act, viz.:

"Section 8. PRIOR EMPLOYMENT.

"(a) The Chiefs and Superintendents of all departments who are appointed, their assistants, and all officers and employees subordinate thereto, save or except part time employees, who are now employed by said City and who were employed by said City on June 1, 1939, are hereby declared to be members of the Civil Service of said City; provided, however, that the City Manager of said City shall not be a member of the Civil Service, nor shall this Act apply to any office held by said City Manager.

"(b) All employees of said City who are required to receive the approval of the Civil Service Board for appointment and who shall be in the continuous serv-

ices of said City for a period of six months shall become members of the Civil Service of said City;

"(c)    All members of the Civil Service are subject to the rules and regulations of the Board of Civil Service but shall not be required to stand any examination, physical and/or mental, except for the purpose of promotion.

"Section 9.   The Board of Civil Service is hereby required to register the names of all officers and employees who are members of the Civil Service and to set opposite each name the respective office, rank or employment which they held or had on June 1, 1939, and shall not be reduced, demoted, suspended or discharged except in accordance with the terms and provisions of this Act.

"Section 10.   LIST OF EMPLOYEES.   The Chiefs and Superintendents of all departments shall within ten (10) days after the first meeting of the Board of Civil Service created hereby, furnish said Board with a list of all of the employees in their respective departments on June 1, 1939, showing their rank, and the period of employment.   Each Employee's name and rank shall be entered upon the Civil Service Register as aforesaid, taking precedence by rank, and those employees of the same rank shall take precedence by seniority."

The petition alleges that the several respondent officers of said city are bound by the provisions of the Act, *supra,* and if followed, observed, recognized and lawfully applied, the petitioner is a member of the Civil Service of the City of West Palm Beach.

On September 30, 1939, as shown by the petition, the relator received notice of discharge and termination of his employment with said city, and the latter

is dated at City of West Palm Beach, Florida, on Sep-
tember 30, 1939, and reads as follows:

"Mr. G. B. McCants,

"628 47th Street,

"West Palm Beach, Florida.

"Dear Sir:

"You are hereby notified that your services in this
department terminated on September 18, 1939. I
regret having to take this action but due to circum-
stances and conditions with which you are as familiar
as myself, I deem it necessary to take this action for
the best interest of yourself and the public you were
serving.

"If I can be of any assistance in any way please do
not hesitate to call upon me.

"Yours very truly,

"(Signed)  A. P. Sadler

"A. P. Sadler,

"Chief Fire Department."

Section 15 of Chapter 20197, *supra,* outlines and
prescribes the proceedings for the discharge or sus-
pension of employees and is viz.::

"Section 15.  PROCEDURE FOR DISCHARGE OR SUS-
PENSION OF EMPLOYEE.— (a) No officer or employee
who is a member of the Civil Service and is appointed,
employed, promoted or confirmed under the terms and
provisions of this Act shall be removed, suspended,
demoted, reduced, fined or discharged, except for cause
shown upon written charges preferred by the City
Manager, departmental head or Civil Service Board
member of incompetency, misfeasance, malfeasance,
nonfeasance, misconduct or violation of law or rules
of the Civil Service and after opportunity to be heard
in his own defense by himself and counsel and the find-

ings and decisions of the Board of Civil Service shall be certified to the City Manager and shall be enforced by said City Manager. The Director, Chief of any department or division and the superintendent of any department or division may suspend a subordinate for a reasonable period not to exceed thirty days. A copy of said charges shall be served upon such subordinate within five days after such suspension, and shall be reported to the Board of Civil Service by such Director, Chief or Superintendent within said time. The Board of Civil Service shall investigate said suspension after giving such subordinate notice as to the time and place of such hearing and in event it finds same was unwarranted and without cause it shall certify the finding to the City Manager, and the said persons suspended shall receive compensation for the time for which he was suspended; provided, however, that no officer or employee shall be fined a sum in excess of one month's compensation. This section shall not apply in event of excessive employment as provided in Section 14 of this Act.

"(b) SUSPENSION AND DEMOTION OF ANY DEPARTMENT HEAD.—The Chief of any department or division and the Superintendent of any department or division may be for violation of the provisions of Section 18 of this Act, or for misconduct, suspended by the City Manager for a reasonable period of time not to exceed (30) days and such suspension shall be reported to the Board of Civil Service within five (5) days, and an investigation shall be had as provided in Subsection (a) of this section. No Chief or Superintendent of any department who is a member of the Civil Service shall be demoted, reduced, fined or discharged except by the Board of Civil Service upon charges preferred

by the City Manager; provided, however, that no officer or employee shall be fined a sum in excess of one month's compensation. Such charges shall be investigated before said Board in accordance with sub-section (a) of this section and the findings of said Board shall be enforced by the City Manager of said City."

On November 13, 1939, the Secretary of the Civil Service Board advised relator that he would be given a hearing on the evening of November 23, 1939, at 7:30 P. M., in the municipal court room of the City of West Palm Beach, and pursuant to said notice a hearing was had and the testimony adduced before the Civil Service Board was attached to and made a part of the relator's petition. It is stated in the petition that the testimony received by the Civil Service Board was hearsay, illegal, incompetent and legally insufficient to support an order reinstating the relator under the provisions of Section 15, *supra*. The alleged hearing was not based upon legal reasons for a discharge as a member of Civil Service, but was based on the question of whether or not the relator should be reinstated to membership of the Civil Service. Several exhibits are attached to and by reference made a part of the petition and it is contended here that the relator was unlawfully discharged as a member of the Civil Service and that under the provisions of Section 15 *supra* he is entitled to retain his membership status therein until removed, suspended, demoted or discharged in accordance with the provisions of Chapter 20197, Special Laws of Florida, Acts of 1939.

The petition commands the officials: (1) to compensate the relator as a fireman at the rate of $120.00 per month after September 18, 1939, until the time of filing the said petition; (2) to enter the name of the relator

upon the register described in Section 10 of Chapter 20197 and to set opposite his name his rank or employment as a Civil Service employee; (3) and to do those things necessary to effectuate and carry out each and every requirement of Chapter 20197.

The grounds for quashing the alternative writ of mandamus filed by the respondents are, viz.: (a) that the relator was not a member of the Civil Service under the provisions of Chapter 20197, *supra* on September 18, 1939; (b) that relator was discharged as an employee prior to the effective date of Chapter 20197; (c) it was impossible for the Chief of the Fire Department to prefer written charges against the relator provided for by Section 15 thereof prior to the effective date of the Act; (d) the relator was guilty of laches; (e) the relator's cause of action, if any, accrued within six months after September 19, 1939, and therefore was barred by Section 66 of Chapter 16758, Special Acts of 1933; (f) the writ attempts to control the discretion of the respondents rather than enforce the performance of a legal duty.

On September 14, 1940, the lower court entered its order sustaining the motion to quash the alternative writ and therein expressed the view that there had been a sufficient compliance with Section 15 of the Act and that the relator was barred from proceeding. A writ of error was taken to the final order of October 2, 1940, dismissing the alternative writ of mandamus.

It is well settled that on a demurrer or motion to quash an alternative writ of mandamus, the allegations of the said alternative writ are admitted to be true for the purpose of testing the legal sufficiency, if not contradicted and denied by the respondents. See State *ex rel*. Harrington v. City of Pompano, 132 Fla.

820, 182 So. 290; State *ex rel.* Peacock v. Latham, 125 Fla. 69, 169 So. 597; State *ex rel.* Waldron v. Wilkinson, 117 Fla. 463, 158 So. 703; State *ex rel.* Perkins v. Lee, 142 Fla. 154, 194 So. 315.

It is contended that the relator was not an employee of said city or a member of the Civil Service on the effective date of the Act and therefore not subject to the several provisions of Chapter 20197. It is further suggested that while Section 8 of the Act makes all regular employees of said city on June 1, 1939, members of the Civil Service and required the Civil Service Board to register the names of all officers and employees who were members of the Civil Service and to set opposite each name the respective office, rank or employment of said employee on June 1, 1939, and all of said employees' names by the terms thereof confirmed in said office which each thereof held on June 1, 1939, does not mean or should not be construed to mean that the Legislature intended to make employees of said city members of the Civil Service and confirm them as such as of June 1, 1939, because the Act did not become effective as a law until ratified by a majority vote of the electors of said city on September 26, 1939. It is difficult to reconcile this contention with the plain statements of Section 8, which the voters of West Palm Beach had before them when at the polls on September 26, 1939. The language of the Act is clear, free from ambiguity, and the will and intention of the Legislature, as shown by the plain mandates of the Act, was to make employees of the City of West Palm Beach members of the Civil Service who were employed regularly by the city on June 1, 1939, and by clear language confirmed them as employees of said city and members of the Civil Service.

If the effective date of the Act was September 26, 1939, the date of the referendum election, as contended by counsel should control, then the authority and power of the chief of the fire department to dismiss or discharge the relator two days thereafter has not been made to appear, because Section 15 provides that an employee of the Civil Service cannot be dismissed or discharged except for cause shown and then upon charges in writing and only after notice and right to be heard by himself or by counsel. I fail to find in the record written charges required by Section 15 of the Act.

A similar statute applicable to the City of Pensacola was considered by this Court in the case of Roark v. State *ex rel.* McDaniel, 122 Fla. 843, 165 So. 901, and this Court in part said:

"As we construe the Act, the city manager is not vested with power to discharge at will those who come within the civil service provisions of the Act. The civil service provisions would lose all efficacy and merit if regardless of civil service status an officer could be discharged at will by the city manager. It is our construction that those persons who were on the eligible lists at the time the Act was passed and who were thereafter appointed to office from the civil service eligible lists, upon being so employed took the status of the civil service employees described in Section 90 of the Act and that they may be removed from office only by the same procedure which is prescribed for the removal of those who were declared to have civil status as employees at the time the Act was passed."

See State *ex rel.* Norris v. Chancey, 129 Fla. 194, 176 So. 78, 113 A. L. R. 576.

The general rule controlling the dismissal or discharge of employees of a municipality working under a Civil Service Act is stated by McQuillin on Municipal Corporations, Revised Vol. 2 (2nd Ed.), pages 448-454, par. 581.1 (557) viz.:

"Same—to Whom Applicable—Causes of Removal. —As has previously been seen, civil service laws and veterans preference Acts usually cover subordinate positions only, and as a rule have no application to elective officers, those holding confidential positions, etc. However, the proper construction and application of the law involved to the situation or position concerned, in view of the action taken of which complaint is made, must control.

"Ordinarily such laws and regulations do not apply to mere temporary employees, or to probationary service; or to those illegally appointed, or whose employment is not in compliance with the civil service laws and veterans preference Acts, or to persons relieved from taking examinations, as those in non-competitive classes, or in unclassified services. Likewise, they do not apply where the removal is made in good faith for reasons of economy; or where an office or place is abolished in good faith, but of course such action cannot be taken to cover up the discharge of an employee in contravention of the law.

"Such laws usually provide that employees under the civil service can be removed only for some dereliction, or neglect or incapacity to perform some duty, or some general delinquency affecting their general character and fitness for office, and upon written charges, a hearing, and evidence, and not otherwise. They forbid appointments and removals to be influenced by political or religious opinions or affiliations.

Otherwise stated, dismissals may be made only for good, sufficient or just cause, such as misconduct, incompetency, inefficiency, or insubordination, and only in the manner provided. The civil service laws in force at the time of the attempted discharge or removal are controlling.

"Where the laws authorizing the removal of civil service employees by the civil service commission for cause are silent as to what constitutes 'cause,' the prevailing judicial view is that the commission has the right to determine such question. However, it would appear that the commission cannot make an unreasonable rule as to the cause of removal. Such laws generally have been held constitutionally valid."

Section 23 of Chapter 20197, *supra,* provides: Subject to the provisions of the referendum herein provided for, this Act shall become effective upon its approval by the Governor or upon its becoming a law without such approval. Became a law without the Governor's approval. Filed in office of Secretary of State June 12, 1939. The Act *supra* became a law on June 12, 1939. See State *ex rel.* Gibbs v. Crouch, 139 Fla. 353, 190 So. 723; Glisson v. Hancock, 132 Fla. 321, 181 So. 379; State *ex rel.* Stuart Daily News, Inc., v. Lee, 120 Fla. 858, 163 So. 135. The Act *supra,* became operative or effective on September 26, 1939, the date of the election at which a majority of the qualified electors of the City of West Palm Beach registered their approval thereof as provided for by Section 22 of the Act. See Neisel v. Moran, 80 Fla. 98, 85 So. 346.

I do not think that Section 66 of Chapter 16758, Special Laws of Florida, Acts of 1933, which requires suits at law and chancery to be instituted against the

City of West Palm Beach within six months from the date such cause of action accrues, is applicable to or controls the suit at bar. See Pippin v. State, 73 Fla. 363, 74 Sou. 653; State v. Philips, 61 Fla. 433, 54 So. 814; Tampa Water Works Co. v. State, 77 Fla. 705, 82 So. 230.

I think that the alternative writ of mandamus stated a prima facie case and on motion to quash, the material allegations of fact were admitted to be true. I do not think it necessary for a decision here to express an opinion on the probative weight or sufficiency of the testimony. I think the order sustaining the motion to quash the alternative writ should be reversed.

BUFORD, J., concurs.