SMITH, Judge.
This is an appeal from a peremptory writ •of mandamus, issued upon the motion of the appellees, as and constituting the Board of County Commissioners of Hernando 'County, commanding the appellant, as Tax Assessor of Hernando County, to promptly * * * carry out the computation and extensions of taxes on the 1962 Tax Assessment Roll for Hernando County * * in accordance with the equalization as effected by Petitioners sitting as a Board of Equalization, and upon said computations ■and extensions to turn over to the Board of County Commissioners * * * for examination and comparison, the original and two copies of said Assessment Roll. * *
Upon the petition filed in the name of the 'State of Florida upon relation of the individuals comprising and acting as the Board of County Commissioners of 'Her-nando County (hereinafter referred to as the Board), the lower court issued an Alternative Writ of Mandamus, directed to the appellant, hereinafter referred to as the Tax Assessor. The alternative writ recites that the Tax Assessor delivered the 1962 Hernando County Tax Roll to the Board for the purpose of hearing complaints and receiving testimony as to the value of any real or personal property, as fixed by the Tax Assessor, and for the purpose of perfecting, reviewing and equalizing the assessment; that the Board heard the complaints of numerous property owners and considered such complaints item' by item, and parcel by parcel, as they appeared on the Tax Roll; that the Board did perfect, review and equalize the assessments; and that this equalization was certified to the Tax Assessor, who thereafter certified to the Board the total amount of taxable property on the assessment roll as it existed after the Board’s equalization. The alternative writ further recites that the Board certified by resolution to the Tax Assessor the amount to be raised for the County, Special School Districts, and other Special Districts, predicated upon the applicable millages; and that the Board directed the Tax Assessor (1) to calculate and carry out the total amount of county taxes, (2) to prepare the recapitulatory tables, (3) to deliver the Tax Assessment Roll to the Board with his affidavit in order that the Board might examine and compare the assessment roll and make any corrections required, and (4) to endorse the Board’s certificate that the assessment roll was correct, in order that the Tax Assessor might issue his warrant and transmit the Tax Roll to the County Tax Collector. The alternative writ charges that the Tax Assessor refused to carry out the computation and extension of taxes on the basis of the tax assessment roll as equalized by the Board; that the Tax Assessor failed and refused to deliver the Tax Roll to the Board; and that such refusal hampered and delayed the Board in the collection of taxes *846 and thereby prejudiced the Board in carrying on the business of the County. The court concluded the alternative writ by commanding the Tax Assessor to forthwith perform the duties of his office as aforesaid, or to appear before the court to show cause why he refuses to do so.
The Tax Assessor moved to quash the alternative writ on the ground that the Board was not a proper relator since it did not have a direct interest in the action sought to be coerced, and no benefit could accrue to it by the performance of that action. The motion to quash was denied.
The Tax Assessor answered, first raising the question presented in the aforesaid motion, and then contending that the actions of the Board, in its equalization, amounted to a general revision of the valuations and an independent assessment of the property listed on the Tax Assessment Roll. The Tax Assessor also contended that the Board had unlawfully delegated its duties as a Board of Equalization to other parties. Upon motion of the petitioners, the court struck these portions of the Tax Assessor’s answer, and an amended answer with substantially the same allegations met the same fate. Upon motion, the peremptory writ of mandamus was issued, the court finding that the duties required to be performed by the Tax Assessor by the command of the alternative writ are statutory duties of a ministerial nature which the Tax Assessor was obligated to perform. We affirm.
 In submitting this appeal on the merits, the Tax Assessor has included a suggestion to this court that it is without jurisdiction to entertain the appeal. He states that, although the Peremptory Writ of Mandamus was issued by the court below, the court did not enter a final judgment awarding or granting to the relators the peremptory writ, and that for the lack of such a final judgment there is no appeal-able order. The Tax Assessor cites as his authority the decisions in City of Bradenton v. State ex rel. Perry, 1935, 118 Fla. 838, 160 So. 506, 100 A.L.R. 400, and City of Miami Beach v. State ex rel. Pickin’ Chicken of Lincoln Road, Inc., Fla.App.1961, 129 So.2d 696. In the Bradenton case, the Supreme Court pointed out that:
“In the foregoing opinion the court has been at some pains to outline the proper course of procedure in mandamus cases such as the one now before the court, because of the large number of appeals in mandamus cases that have recently appeared in this court as to which the controversies involved have been largely, if not entirely, concerning questions of practice and procedure rather than propositions of substantive law.”
The Court had stated (118 Fla. at 842, 160 So. at 508) that:
“On the completion of the hearing of an application for a peremptory writ of mandamus the usual procedure is for the court to enter its formal judgment awarding or denying the peremptory writ. Such final judgment is usually separate and distinct from the peremptory writ itself, because the peremptory writ is supposed to issue as a consequence of the judgment awarding it.” (Emphasis added)
In the Miami Beach case the trial court first entered a peremptory writ and then, noting the lack of finality thereof, entered the final order from which the appeal was taken. When a jurisdictional question was raised, the District Court of Appeal found that the judgment awarding or granting the peremptory writ entered after the issuance of the peremptory writ constituted an ap-pealable final order, relying on the language quoted above from the' Bradenton case.
The peremptory writ issued in this cause incorporated in one document, signed by the judge, both a final judgment awarding the peremptory writ and the peremptory writ itself. The fact that this document is headed “Peremptory Writ of Mandamus,” and not “Final Judgment and Peremptory Writ of Mandamus,” is immaterial *847 because the heading does not determine the force and effect of the contents. The fact that the Supreme Court has stated that the entry of a separate final judgment is “the usual procedure” does not require a determination that the incorporation of both the final judgment and the peremptory writ of mandamus in one document is error, or that such combined document is not a final judgment which will support an appeal. In recent years the usual procedure seems to have been more overlooked than noted. See 31 Fla. Statutes Annotated, Mandamus, Forms, p. 136, et seq.; the Florida Bar’s Manual No. I, Florida Civil Practice Before Trial, Extraordinary Writs, § 25.5; and Goodrich and Cone, “Mandamus in Florida,” 4 U.F.L.Rev. 535, 541-43. The appellate decisions of Florida are replete with opinions based upon appeals from a peremptory writ of mandamus which incorporated by its terms both the final judgment and the writ signed by the judge of the trial court. We also note that the Tax Assessor referred to the order appealed from in his notice of appeal as “the Judgment and Peremptory Writ of Mandamus,” and he assigned as error the trial court’s “rendering its Judgment and Peremptory Writ of Mandamus.” Although the courts are always concerned with questions of jurisdiction, the better procedure would have been for the Tax Assessor to have raised his question as to jurisdiction of this court by motion, promptly after filing his notice of appeal. We do not encourage dilatory practices and particularly so where, as here, the issue is between public officials. We have jurisdiction.
The Tax Assessor contends that the court erred in denying his motion to quash the alternative writ on the ground that the Board was not a proper relator, as it did not have a direct interest in the action sought to be coerced, nor would it benefit by the performance of the action. This contention is without merit. Chapter 125, Florida Statutes, F.S.A. imposes many duties, obligations and responsibilities upon the Board of County Commissioners, all of which not only establishes the Board’s direct interest in the action sought to be coerced but also clearly establishes the benefits to be derived by the Board by the performance of the actions. Chapter 193, Florida Statutes, F.S.A., specifically imposes certain duties upon the Board of County Commissioners with respect to the county tax assessment roll,[1] and a part of the taxes levied are ultimately remitted to the Board for their expenditure for any and all purposes authorized by law. Thus, it was proper for the board to coerce the Tax Assessor by mandamus, because such action coerced was necessary to be performed by the Tax Assessor in order that the Board could perform its own duties. State ex rel. Norris v. Chancey, 1937, 129 Fla. 194, 176 So. 78, 113 A.L.R. 576. These facts clearly distinguish the instant case from the situations in Pennock v. State ex rel. Hood, 1911, 61 Fla. 383, 54 So. 1004, and Wiecking v. State ex rel. Coackman, 1913, 66 Fla. 49, 62 So. 898, because the direct interest sought to be coerced in each of those cases was not in the Board but in others who would receive all of the benefits. This distinction is clearly set forth in State ex rel. White v. MacGibbon, 1920, 79 Fla. 132, 84 So. 91, wherein it was noted that in Pennock and in Wiecking the Board was not officially directly interested in the payment of the warrants.
The Tax Assessor next contends that the Board did not have the authority to employ real estate brokers to assist it in its equalization of the tax roll. The authority of the Board of County Commissioners to compensate the real estate appraisers was neither before the trial court nor is the question here, and it is specifically excluded from our consideration. The *848 question is treated only in the light as to whether or not the Board of County Commissioners, when sitting as a Board of Equalization, may have and receive the testimony, advice and assistance of experts as to the value of real property. Section 193.25, Florida Statutes, F.S.A. provides that the Tax Assessor shall meet with the Board of County Commissioners “for the purpose of hearing complaints and receiving testimony as to the value of any property, real or personal, as fixed by the county assessor of taxes, of perfecting, reviewing and equalizing the assessment.” This statute then requires the Board to give notice and an opportunity to be heard as to assessment and values. Under the provisions of this statute, the Board of County Commissioners could hear and receive the testimony of the real estate brokers employed by it.
On the questions of whether or not the Board unlawfully delegated its powers and duties as to equalization to its employed real estate brokers, and whether or not the Board’s equalization amounted to a reassessment, we note that the statement of facts contained in the alternative writ are supported by the certified copies of the Minutes of the Board, establishing the fact that the Board acted on the complaints filed by one hundred and eighty-one separate property owners. Some of the complaints were with respect to many parcels of property assessed on the Tax Roll to the one complaining party. The alternative writ shows without contradiction, by statements of facts in the answer, that the Board acted individually and specifically on each complaint, and on each complaint where the one owner complained as to numerous parcels of property assessed to him, the Board acted on each of the parcels owned by the one complaining owner. The Board denied some complaints, accepting and retaining the Tax Assessor’s assessment with respect to each such parcel. In some instances, the Board ordered a change in the amount of the assessed value of a particular parcel; and of the changes so ordered, some resulted in the Board fixing and determining a value which was the same as the value recommended by the real estate brokers and in some instances fixing a value different than that recommended by the real estate brokers and different than that assessed by the Tax Assessor. The record refutes the conclusion of the Tax Assessor that the Board delegated its duties; in fact the record clearly establishes that the Board did not delegate its duties. The Board did not perform a general reassessment of the property of the county in lieu of the assessment of property made by the Tax Assessor. It acted separately and independently on each parcel where a complaint was made by the person to whom the property was assessed. The Board’s action was equalization of each particular piece of property. It was not a general raising or lowering of the assessment of property in order to constitute a general reassessment, as was the case in Armstrong v. State, Fla.1954, 69 So.2d 319. The actions of the Board were in accordance with the general principles approved in Sanders v. Crapps, Fla.1950, 45 So.2d 484, and Hoffman v. Land, Fla.1951, 55 So.2d 806. As was stated in the latter decision (55 So.2d at 809): “The best informed men in the past have differed on the question of value of classes of property subject to taxation and sincerity of purpose may be ascribed to the honest views, or conclusions reached by all, free of improper motives or bad faith.” The question, as to whether the true and correct values are those values fixed by the assessor or those values fixed by the Board, is not involved. The Tax Assessor is vested by law with the authority to initially fix the values by applying his best judgment according to the applicable principles of law,, and the Board is vested by law with the power and authority to exercise its best judgment on equalization in determining: values as to each individual parcel of property, which value could be either the same as or different from that determined by the Tax Assessor. The record here establishes. *849 that the Board performed its duties in the manner prescribed by law, and the Board having so acted, it then became the ministerial duty of the Tax Assessor to carry out the computation and extension of taxes on the 1962 Tax Assessment Roll for Hernando County in accordance with the equalization ordered by the Board, to turn over to the Board the original and two copies of the Tax Assessment Roll for examination and comparison, and to permit the Board to correct all mistakes and inaccuracies in order that the Board may endorse their certificate thereon so that the Tax Assessment Roll with the warrant of the Tax Assessor could be delivered to the county tax collector for the collection of the taxes set down in the Roll.
Affirmed.
SHANNON, C. J., and ALLEN, J., concur.

. Equalization pursuant to § 193.25, Florida Statutes, F.S.A.; raising or lowering values fixed by Assessor, § 193.27; determining the rates to be levied pursuant to § 193.31; examining and comparing the final and completed tax assessor’s roll and certifying that the roll is correct pursuant to § 193.29.