**CURTIS L. CLEMENTS and MABEL CLEMENTS, his wife, v. P. L. STARBIRD SR., and P. L. STARBIRD JR.**

12 So. (2nd) 578

March 19, 1943

January Term, 1943

Division B

556

*Warlow & Carpenter,* for appellants.
*Fishback & Smith,* for appellees.

BROWN, J.:

Plaintiffs below, appellants here, brought suit in ejectment against the appellees to recover the possession of certain described land, attaching to the declaration a bill of particulars stating that plaintiffs would rely at the trial upon a certain tax deed executed to the plaintiffs on January 6, 1941, attaching as an exhibit a copy of the tax deed. The defendants filed a plea of not guilty and also filed a motion that the court declare the tax deed null and void. The motion set forth six grounds but the 1st, 2nd and 5th grounds were evidently abandoned and have not been argued in the briefs. So they may be treated as having been abandoned.

In support of the motion the parties submitted to the court an agreed statement of facts, consisting of four paragraphs. The 3rd paragraph relates to a matter not mentioned in the motion, but it might have been considered by the court. That paragraph stated that the tax assessor did not extend and calculate the amount of taxes to be raised for the different governmental purposes, but that an employee in the office of the tax collector made such extension and calculated the amount of taxes to be raised against the said lands for such governmental purposes and that this was done before the tax assessor had completed his assessments for the year 1936.

The Court granted the defendants' motion and held the tax deed null and void and dismissed the plaintiff's suit, but in its order the court did not state which ground or grounds of the motion his order was based on. Whether the court considered the matter of the extension of the taxes by an employee of the tax collector before the tax assessor had completed his roll does not positively appear. Nor does it appear from the Agreed Statement of Facts whether this was done at the request of the tax assessor and was ratified by him by his signing of the roll. It is not alleged that the extensions were erroneously made. In the opinion of this Court in the case of State ex rel. v. Board of Commissioners of the Everglades Drainage District, 135 Fla. 559, 190 So. 712, it is stated in the opinion that the extension of taxes on the tax roll are ministerial duties only. And in the case of Suits v.

Hillsborough County, 150 Fla. 115, 7 So. 346, it was stated that "When the assessed valuation is determined, the matter of extending the taxes is more or less perfunctory." Undoubtedly this is a ministerial duty and in the larger counties of the State it is one that is usually performed by some employee of the tax assessor, and if nothing is clearly shown to the contrary, the signing of the roll by the tax assessor will be deemed to amount to approval and adoption by him of the extension of the taxes appearing on the tax roll at the time he signed it. In this connection see City of Tampa v. Mugge, 40 Fla. 326, 24 So. 494.

We might also eliminate here the last ground of the motion, to the effect that the meeting of the county commissioners when they met to hear complaints, and to receive testimony as to the value of property, was not held in the clerk's office but in the county commissioners' room, which was in accordance with the published notice. It does not appear that at the meeting in question the assessment on defendants' land was increased, or that he was in any way injured by reason of the board holding its meeting in the county commissioners' room, especially in view of the fact that the notice of said meeting which was published stated that such meeting would be held in the county commissioners' room. No valid departure from the spirit and purpose of Sec. 929 C.G.L. is made to appear. City of Tampa v. Mugge *supra.* As this point is not insisted upon in the brief, we apprehend that the court did not base its action upon this particular ground of motion.

We will now take up the two remaining questions which counsel for the respective parties have emphasized in their briefs. The first of these is based on the 3rd ground of the motion. The Agreed Statement of Facts shows that the trustees of the special tax school district in which the lands are located did not certify to the board of county commissioners the millage voted for the maintenance of the special tax school district for the year 1936, or for any of the subsequent years for which the lands were supposed to be delinquent for taxes, but notwithstanding this the county commissioners levied taxes for the maintenance and support of

said district, and the tax assessor assessed the same, for said years. There is attached as an exhibit to the agreed statement of facts a copy of the resolution of the board of county commissioners fixing the millage for the year 1936, including the special tax school districts within the county. In this resolution it is recited that the millage of the various special school districts were fixed in accordance with the millages set forth in a letter from the board of public instruction. A copy of that letter dated July 8, 1936, is also attached as an exhibit. The letter is addressed to the board of county commissioners of Orange County and informs the board that "You will note below the millages voted by the freeholders of the various special tax school districts of Orange County for the purpose of operating the free public schools of these districts for the years 1936-1937." The letter also sets forth the millages estimated by the county board of public instruction to be necessary to meet the budget requirements of each of the districts during that period, and also the millages estimated to be necessary to meet the budget requirements for interest and sinking funds for each of said districts for said years and gives appropriate instructions as to the levy of the taxes. The letter shows that these millages and estimates were made by the board of public instruction, but the letter is signed "Judson B. Walker, Superintendent and Secretary of the Board of Public Instruction for Orange County, Florida." The motion does not allege that any of these figures were incorrect. The burden of the motion was that the trustees of the Special Tax School District had not certified to the board of county commissioners the millage voted to be assessed and collected upon the taxable property within the district as required by Sec. 712-713 C.G.L. Appellants contend that the foregoing two Sections of Compiled General Laws were superseded or repealed by implication by Chapter 16838, Laws of 1935. Appellants contend that under said act the governing authority or board of a taxing district in this State is the county board of public instruction. Also, that Sec. 709 C.G.L. provides that "The powers of trustees shall not be those of control, but of supervision only, and shall extend to all the public

schools within the Special Tax District." And that Section 710 C.G.L. provides that all public schools conducted within a special tax district shall be under the direction and control of the county board of public instruction and county superintendent as in other districts. From this it is argued that the board of public instruction is the governing authority or board of the district and that under Chapter 16838, Acts of 1935, the board of public instruction was the proper body to furnish the school budget for the particular district in question here, as was done in this case. We cannot agree that Chapter 16838 superseded or impliedly repealed Sections 712-713 C.G.L. which sections placed a special duty upon the trustees of the district. It is true that both of these Sections were expressly repealed by Section 27 of Chapter 18134 of the Acts of 1937, which statute became effective May 26, 1937. However, Sections 712-713 C.G.L. were in full force and effect at the time of the levy and asessment of the Special Tax School District tax for the year 1936, which was the basis of the tax deed here involved. The powers of general control which rested in the board of public instruction did not relieve the district trustees from their statutory duty under Section 712 to prepare an itemized estimate of the amount necessary to be raised, and to certify the rate of millage voted, and to send a copy of the itemized estimate to the clerk of the board of county commissioners and another copy to the county board of public instruction, nor did it relieve the county commissioners of their duty under Section 713 to order the assessor to assess and the collector to collect the amount legally assessed upon the property of the Special district at the rate of millage designated by the district board of trustees.

Notwithstanding the failure of the trustees of the school district to comply with Section 712, by certifying the millage voted to the county commissioners, the agreed statement of facts alleges that the county commissioners levied taxes for the maintenance and support of such special tax school district for the year 1936 and subsequent years and the assessor assessed same. The copy of the resolution of the county commissioners shows that the school district millages of the

special tax school districts within Orange County for 1936 were ascertained and fixed by them in accordance with the millages set forth in the letter from the board of public instruction and there is no allegation that any of these figures were incorrect. Section 712 C.G.L. required the district trustees to certify these figures to the board of public instruction, as well as to the county commissioners. That resolution also showed that the tax assessor was instructed to assess the general county and special school district millages and the tax collector was instructed to collect the same as so assessed. It therefore appears that the county commissioners complied with Section 937 C.G.L. and the fact that they obtained some of their information from the board of public instruction instead of directly from the trustees of the special tax school district would not necessarily invalidate the tax, in the absence of any proof showing that the figures furnished to them by the board of public instruction with regard to the special tax school district millage was incorrect. The Agreed Statement of Facts does not show that the trustees did *not* make the estimate required by Section 712 C.G.L. It merely says that the trustees of the Special School District here involved did not certify to the board of county commissioners the millage voted for the maintenance of the Special Tax School District for the year 1936 or the subsequent years for which the lands are alleged to be delinquent for taxes. Of course it was their duty to make this estimate and report under Section 712 to the county commissioners, as well as to the board of public instruction, but indulging the presumption that public officials do their duty unless the contrary be shown, it will be assumed that the trustees did send this report or a copy thereof to the board of public instruction and that the board gave the proper figures to the board of county commissioners, there being no allegation to the contrary in the motion or the agreed statement of facts. Thus the purpose of Section 712 C.G.L. would be subserved, which is, as stated in Section 713 C.G.L., that the county commissioners shall order the assessor to assess and the collector to collect the amount legally asesssed upon the property of the special district "at the rate of millage desig-

nated by the board of trustees." In the case of Poole v. DeVane, 113 Fla. 54, 151 So. 313, this Court held in effect that a resolution of the county commissioners which was in substantial compliance with 937 C.G.L. was prima facie correct. The headnote in that case reads as follows:

"Resolution of county commissioners determining aggregate budget for year and levying tax accordingly held sufficient compliance with statute requiring county commissioners to determine amount to be raised by taxes for all county purposes and to report to county assessor, so as to validate tax deed to land sold for nonpayment of taxes levied pursuant to resolution. (Comp. Gen. Laws, 1927, Secs. 937, 2307)."

We conclude therefore that the third ground of the motion is not sufficient to show that the tax in question was an illegal tax.

This brings us to the last ground of attack upon the validity of the tax deed as made in the 4th paragraph of defendants' motion in the court below, which alleges that the millage levied by the tax levying authorities was not lawfully levied because a part of the tax so levied was assessed for the retirement of the court house refunding bonds, which bonds were invalid, and a tax for that purpose could not therefore be lawfully assessed. The Agreed Statement of Facts says that these were courthouse refunding bonds issued pursuant to a special act for Orange County approved April 24, 1929; that the act provided for refunding the floating indebtedness on the courthouse of the county; that a copy of the act and notice of sale of the bonds is attached thereto, and that an election was held in June of 1929 pursuant to the act but that the notice of the election limited those participating in said election to those who were duly qualified electors *and freeholders* of the county. The Act referred to is Chapter 14262, Special Acts of 1929. The Act shows on its face that it was for the purpose of refunding the floating indebtedness on the courthouse of Orange County and to enable the county commissioners to reduce the tax levy for the year 1929 from five mills to one mill for the courthouse building. It authorized a bond issue of $250,000 to bear interest at the rate of 5 per cent. It contains a provision to the

effect that the general laws of the State relating to the issuance and disposition of county bonds shall apply to the bonds issued under the Act. The Act contains a referendum provision and stated that before any bonds should be issued under the Act the question of whether or not they shall be issued must first be submitted to the electors of Orange County "qualified to vote in bond elections." There was in effect at that time Section 250 C.G.L. which provided that voters in any bond election must be freeholders. Sec. 6 of Art. IX of the Constitution had not been amended at that time. The amendment was adopted in 1930.

This referendum provision of the Special Act was out of line with Sec. 21 of Art. III of the Constitution as amended in 1928, which provided that such referendum should be voted on by the "qualified electors." It seems to be admitted by counsel, though the record does not positively show it, that no notice was published of the intention to apply for the passage of this Act and therefore to make it valid the referendum clause should have complied with said amended Sec. 21, Art. III, as amended in 1928, which provides that no publication of notice is required when the local or special law contains a provision to the effect that the same would not become operative until it has been ratified by a majority of the qualified electors participating in an election called in the territory affected by such special or local law. In Stuart v. New Smyrna Drainage District, 100 Fla. 1126, 130 So. 575, this Court held a similar referendum to freeholders did not comply with the above constitutional provision, but pointed out that the local act there in question dealt with other important matters in addition to an issue of bonds. And in the case of Pitt v. Belote, 108 Fla. 292, 146 So. 280, this Court intimated that local acts dealing only with bond elections might be governed entirely by Sec. 6 of Art. IX as amended in 1930, without having to comply with Sec. 21 of Art. III as to notice, referendum, etc. But the Act involved here was adopted in 1929. So the local act here in question was invalid, and the bonds would also be invalid unless the general powers of the issuing authority to issue such refunding bonds were otherwise sufficient, and were complied with.

It may well be that the validity of the bonds issued pursuant to the above special act could not be collaterally attacked in an ejectment suit such as this, in which no bondholder had been brought before the court and been given an opportunity to be heard; but aside from this, the county commissioners of Orange County *were vested* with authority to issue bonds of this character without the aid of any special act. Sec. 3 of the special act attempted to leave the county commissioners with all their powers under the general laws of the State relating to the issuance and disposition of county bonds, which they had anyway.

Section 2309 C.G.L. gives the board of county commissioners the power to issue county bonds for various purposes, among others for erecting a courthouse or jail and "refunding the outstanding indebtedness of the county." And later on the general refunding Act of 1931, Chapter 15772, while not applicable here, expanded this authority and gave the county commissioners full and explicit authority to issue bonds to refund outstanding bonds or any other funded debt of the county. And furthermore, as long as the bonds referred to were outstanding and unpaid, it was the duty of the board of county commissioners to levy a tax to take care of the interest and sinking fund requirements. The only way the county commissioners could have been relieved of that duty would have been for these bonds to have been declared invalid and void by some court of competent jurisdiction. The county commissioners having been given general authority under the statute to issue bonds of this character, this Court will not be warranted in holding that the tax levied by them for the retirement of the interest and principal of said bonds was an invalid tax.

For these reasons we think the court below was in error in holding the tax deed null and void upon any of the grounds stated in appellees' motion in the court below. This ruling and the judgment dismissing plaintiff's suit, must therefore be

Reversed and remanded.

BUFORD, C. J., THOMAS and SEBRING, JJ., concur.