45 So.2d 484 (1950)
SANDERS
v.
CRAPPS et al.
Supreme Court of Florida, Special Division B.
March 21, 1950.
Rehearing Denied April 24, 1950.
J. Lewis Hall, Tallahassee, for appellant.
R.C. Horne, Madison, for appellees.
CHAPMAN, Justice.
An alternative writ of mandamus issued out of the Circuit Court of Dixie County, Florida, upon the petition of P.C. Crapps and P.C. Crapps, Jr., owners of described real estate situated in Dixie County and subject to taxation, against the Honorable J.B. Sanders, as Tax Assessor of Dixie County. The Tax Assessor, previous to the filing of the petition, in an official capacity determined and fixed the valuations of the relators' lands for taxation purposes for the year 1949, as owned by them and situated in Dixie County. Pursuant to statutory authority, the taxpayers of Dixie County were given the right and privilege to be heard on the question of the valuation of assessments for the year 1949 of their property as fixed and determined by the Tax Assessor by the Board of County Commissioners sitting as a Board of Equalizers.
The Board of County Commissioners, at their July, 1949, meeting, after giving notice *485 as required by law, proceeded to hear and consider complaints on the part of taxpayers of Dixie County on the question of valuations of property as submitted by the Tax Assessor for taxation purposes for the year 1949. The appellees-relators presented to the Board complaints at the aforesaid meeting as to the excessive valuations on their property for the year 1949 as proposed by the respondent-appellant Tax Assessor. The Board, after hearing all interested parties, made and entered its order, the effect of which was to reduce the amount of the valuation as proposed by the Tax Assessor on relators-appellees lands situated in Dixie County for the year 1949 reflected by the record as follows:

 Valuations Valuations
 of Assessor of Comm'rs.
Description Sec. Twp. S.Rge E. Reduce from To
--------------------------------------------------------------------------
All 14 8 10 $3160.00 $2533.00
E 1/4 of NE 1/4, W 1/2
 of NE 1/4 & NE 1/4
 of SE 1/4 22 8 10 2160.00 1560.00
All, less R.R. 24 8 10 3120.00 1992.00
All 26 8 10 3200.00 2560.00
All 36 8 10 3200.00 1905.00
All 1 9 10 3200.00 2560.00
All 1 8 11 3000.00 1905.00
All 2 8 11 3000.00 1905.00
All 3 8 11 3200.00 1920.00
All 4 8 11 3190.00 2552.00
All 5 8 11 3190.00 2552.00
All 6 8 11 3190.00 2552.00
All 19 8 11 3200.00 2560.00
All 30 8 11 3200.00 2560.00
All 31 8 11 3200.00 2560.00
W 1/2 32 8 11 1860.00 1550.00
All 8 9 11 2960.00 2560.00
All 9 9 11 2960.00 2560.00

It appears by the record that the Assessor was personally present when the order of reduction was entered by the Board and protested the order of reduction. He contended before the Board that the valuations as determined by him were correct and the Board, legally, could not reduce the same. Pertinent portions of his letter to the Board are viz:
"This will acknowledge receipt of your letter of July 6th, wherein you advised of reduction made in property assessments of P.C. Crapps & Son, R.A. Bellot and Shamrock Properties, Inc.
"At the meeting at which this action was taken, you will recall I requested you to examine my assessment rolls and compare the assessment of the above properties with the assessment of similar properties in the same territory for the purpose of determining whether or not assessments of the properties in question were on an equal and like basis as other properties similarly situated. If you had done this, you would have found that there was no inequality of assessment with respect to said properties.
"The law plainly states that the County Commissioners, sitting as an Equalization Board, shall equalize Assessments. This means that if certain properties are out of line with assessments made against other properties of like character, situation, etc. then the Board may reduce said property or raise other property to make the assessments *486 equal and all properties carry their fair, just and equal share of the tax burden.
"The Board in the instant case did not equalize this property, as it was already assessed on the same basis as similar property.
"Under these circumstances, I respectfully decline to reduce the assessments in question as outlined in your letter of July 6th, and shall retain the assessments on the roll as they now appear."
The alternative writ alleged, upon information and belief, that the Tax Assessor extended the roll and computed the totals thereon based upon assessed values of the lands, as originally determined by him and has not, as required by law, extended the roll and computed the totals thereon based upon the valuations as fixed by the Board of County Commissioners sitting as a Board of Tax Equalizers. It is the lawful duty of the Assessor to observe, follow and abide by the valuations fixed by the Board sitting as a Board of Tax Equalizers and not by the valuations fixed and determined by the Tax Assessor.
The commands of the alternative writ required the Tax Assessor to extend the valuations upon the lands of the relators-appellees in accordance with the equalization thereof as determined by the Board of County Commissioners, sitting as a Board of Tax Equalizers, upon the tax roll of Dixie County, Florida, or to show cause for not so doing.
The return or answer of the respondent Assessor to the alternative writ assigns the following reason for not complying therewith viz: (1) the protests of the relators to the valuations made by this respondent were not based on discriminations in the assessments of the lands and could not lawfully vest in the Board of County Commissioners the jurisdiction to arrive at an accurate and reasonable valuation thereof as related to similar or comparable property of the county assessed upon an equal and uniform basis; (2) that the reason of the respondent for not reducing the valuations as approved by the Board was the Board of County Commissioners is without jurisdiction and lawful authority to order and make the reductions so attempted by the Board sitting as a Board of Equalizers; (3) the valuations as made by the Board are not equal or similar to the valuation placed on other lands situated in Dixie County, but in fact are lower in valuation than other property and a discrimination in valuation now appears of record in favor of the relators as against other landowners of Dixie County.
(4) Pertinent parts of respondent's return are viz: "That he assesses the value of property in Dixie County, Florida, upon a uniform basis, that is, all marsh land is assessed on the basis of approximately $2.00 per acre; that all swamp land is assessed on the basis of approximately $3.00 per acre, and that all `cut over' land (meaning land from which timber has been cut and removed) is assessed on a basis of approximately $4.00 to $5.00 per acre, depending on the number of years since the timber was cut and removed therefrom, and that all timbered lands, (meaning lands from which the timber has not been cut and removed within recent years) is assessed on a basis of $5.00 to $8.00 per acre, and that cultivated lands are assessed at comparatively higher rates; that the land of petitioners was assessed on this basis in common with all other lands of comparable and similar kind and character in the county, and that there was no discrimination or inequality or lack of uniformity in the assessment of petitioners' lands, nor was there any excessive valuation placed thereon; that the assessment and valuation placed by defendant upon the property of petitioners was fair, accurate and just and that the acts of the Board of County Commissioners in reducing said valuations was arbitrary, unreasonable and that if defendant had accepted, approved or abided by the valuations placed on said lands by the Board of County Commissioners that it would have resulted in petitioners' lands being assessed at a lower rate than other lands of similar or comparable character in the county".
The trial court sustained a motion to strike the answer or return of the respondent, *487 supra, largely upon the theory that it was legally insufficient as a defense to the issuance of a peremptory writ. The peremptory writ issued as prayed for and the respondent appealed.
The appellant respondent through counsel poses for adjudication here three questions, which may be considered under a single assignment, viz:
"I. Does a Board of County Commissioners, sitting as a Board of Equalization, have jurisdiction and power to reduce valuations placed on land by Tax Assessor when neither excessive valuation nor discrimination is shown?
"II. Can a Tax Assessor question the validity of the action of Board of County Commissioners in reducing valuations placed on land by Tax Assessor on the grounds that no protest based on excessive valuation or discrimination was made to said Board?
"III. Is it an abuse of judicial discretion to grant motion for peremptory writ of mandamus when it appears without contradiction that the granting of such writ will give preference to petitioners in the matter of valuations on their lands for taxes, and result in petitioners not having to pay their fair share of the tax burden of the County?"
Section 1 of Article 9 of our Constitution, as amended at the 1944 General Election, F.S.A., provides "that the Legislature shall provide for a uniform and equal rate of taxation * * * and shall prescribe such regulations as shall secure a just valuation of all property, both real and personal, excepting such property as may be exempted by law for * * * education * * *." It is generally conceded that the law requires and demands of all taxing officials the duty and responsibility of exercising good faith and sound judgment in arriving at valuations of all property for taxation purposes so that equality and uniformity in valuations shall at all times prevail.
Section 193.06, F.S.A., provides that all the lands shall be assessed in the county, city or town, in which the same shall be, and the real estate of incorporated companies liable to taxation shall be assessed in the county, city or town in which the same shall be in the manner as the real estate of individuals and may be returned and sold in the same manner as property owned by individuals and shall be assessed at their full cash value. (Emphasis supplied). Section 1 of Article 9 of the Constitution provides for a uniform and equal rate of taxation * * * so as to secure a just valuation of all property within the taxing unit. It is the duty of the Legislature to prescribe regulations so as to secure a just valuation of all property.
Section 193.25, F.S.A., provides that the County Assessors of Taxes shall complete the assessment rolls of their respective counties * * * and the Assessors shall meet with the Board of County Commissioners at the Clerk's office of their respective counties for the purpose of hearing complaint and receiving testimony as to the value of any property, real or personal, as fixed by the County Assessor of Taxes, of reviewing, perfecting and equalizing the assessments * * * should the Board increase the value fixed by the County Assessor * * * due notice thereof shall be given to the owner for a hearing before the Board so that such persons can make complaint as to the change in valuations.
Section 193.27, F.S.A., provides that the Board of County Commissioners may equalize the assessment of the real estate or personal property in their respective counties and for that purpose may raise or lower the value fixed by the County Assessor of Taxes on any particular piece of real estate or personal property.
Section 193.29, F.S.A., in part, provides that the County Assessor of Taxes in each county shall, immediately after the assessment of the county has been reviewed and equalized by the County Commissioners * * * the Board of County Commissioners shall endorse on the certificate that the same has been approved and thereafter no assessment as made shall be changed by the County Commissioners.
*488 The above statutes grant to the Board of County Commissioners the power and authority to equalize tax assessments made by the County Tax Assessor. See Sparkman v. State, 71 Fla. 210, 71 So. 34; Cooey v. Johnson, 95 Fla. 946, 117 So. 111; Clements v. Starbird, 152 Fla. 555, 12 So.2d 578, and similar cases.
It was the legislative intent that all property should be valued for taxation, equally and uniformly, at its full cash value, and to achieve these ends this power was delegated by our Constitution and statutes to the County Tax Assessor and the Board of County Commissioners, sitting as a Board of Equalizers of each county. The Legislature knew that perfect accuracy in valuing property was difficult of attainment; intelligent men frequently disagree as to the value of common objects such as animals, houses and lands and the most that may reasonably be expected is a fair and just approximation of all property so as to maintain equality and uniformity so firmly imbedded in our fundamental law. We fail to find error in the record.
Affirmed.
ADAMS, C.J., and TAYLOR, Associate Justice, concur.
HOBSON, J., concurs specially.
HOBSON, Justice.
I concur in the opinion prepared by Mr. Justice Chapman for it is my view that the Circuit Judge did not commit error in striking the return and in issuing a peremptory writ requiring the Tax Assessor to extend the Roll and use the valuations as fixed by the Board of County Commissioners with reference to petitioners' lands. It may be that the Tax Assessor when he originally fixes the valuation of lands for tax purposes acts as a quasi judicial officer  certainly he is vested with some discretion  but after the Board has met and performed its duties and exercised its power as provided in the statute, the functions of the Tax Assessor thereafter are purely ministerial. He can not by failing to perform his ministerial duty nullify the action of the Board of County Commissioners, although a tax-payer, as such, might raise in a proper case, the same points which the Tax Assessor attempted to raise in his return to the alternative writ. People v. Pitcher, 61 Colo. 149, 156 P. 812, Ann.Cas. 1918D, p. 1185.