MATHEWS, Justice.
This controversy arose between the Board of County Commissioners and the-County Assessor of Taxes in Madison County.
The County Assessor of Taxes, in compliance with the law, finished his tax assessment roll for the year 1953 and submitted the same to the Board of County *320 Commissioners as a tax equalization board. Pursuant to notice, duly published as required by law, the Board of County Commissioners met for the purpose of hearing and receiving complaints and testimony as to the value of “any property * * * as fixed by the said County Assessor of Taxes, and of perfecting, reviewing and equalizing,the assessment”. Section 193.25, F.S.A. The law further provides that the County Commissioners may continue in session from day to day as long as shall be necessary. The same section provides that the Board of County Commissioners shall meet for the purpose' of hearing complaints from “owners or agents of any real estate * * * the value of which shall have been fixed by the assessor, or changed by them”.
Pursuant to law, the Board of County Commissioners met for the purposes as stated with the County Assessor of Taxes. The minute entry of the first meeting of the Board of County Commissioners- shows that at said meeting “Complaints of a general natm~e were verbally made”. The Board then recessed until 8:00 o’clock P.M., July 6, for the purpose of hearing additional complaints. The minute entry of the Board of County Commissioners with reference to the meeting of July 6, 1953, was that another meeting should be called on July 13, 1953 for the same purpose. The minute entry for the meeting of July 13, showed -several taxpayers appearing to register “a general complaint as to the increase in valuation of the whole roll and asked for relief.” The minutes of the meetings of the Board of County Commissioners and the resolutions passed show clearly that the complaints made were with reference to the entire roll and of all of the taxable property in the county and were of a general nature and that no complaints were shown by any individual taxpayer as to his particular property in question. In other words, we fail to find in the record any complaint from any taxpayer that his property was over-assessed with reference to the tax roll for the entire county or in comparison with any other property in the county. If any particular piece of property shown on the tax .roll was assessed too high in comparison with any other property in the county, no complaint of that nature is shown by this record.
The Board of County Commissioners adopted a resolution ordering that the assessed value of real property appearing on the rolls for 1953 be reduced and lowered to the figures appearing on the 1952 Tax Roll “severally for each corresponding piece of property thereon” and thereupon ordered and directed' the Tax Assessor to extend on the 1953 Roll the corresponding value of each piece of real property severally as the same , appears assessed and determined on the 1952 tax roll. The Tax Assessor refused to comply with the orders of the County Commissioners and this suit resulted.
Petition for mandamus was filed, alternative writ issued, the pleadings were settled and the Court in an exhaustive opinion granted peremptory writ notwithstanding the return. This appeal was taken from that order.
Chapter 193, F.S.A., and particularly, Section 193.25, F.S.A., in connection with Section 5, Article IX of the State Constitution, F.S.A., are controlling in this case. Section 5, Article IX of the State Constitution, provides that the Legislature shall authorize the “several counties * * * in the State to assess and impose taxes for county, * * * purposes, and for no other purposes, and all property shall be taxed upon the' principles established for State taxation.” Section 1 of Article IX of the State Constitution provides, with reference to state taxation, that “The Legislature shall provide for a uniform and equal rate of taxation”. In other words, when the state taxation, is involved, taxation shall be uniform throughout the state and when county taxation is involved, it must be uniform throughout the county.
Section 6 of Article VIII of the State Constitution provides for a County Assessor of Taxes, and that his powers and duties shall be prescribed by law. Chapter 193, F.S.A., provides the powers and duties of the County Assessor of Taxes. He *321 is required to make a personal inspection, unless he is acquainted with the land, and determine the value of each piece of property in the county from his personal inspections, experience and other available information. It is presumed that the County Assessor of Taxes performed his duty.
The primary question to he considered in this case is whether or not the County Commissioners may make a blanket reduction on each piece of property assessed in the county when there has been no complaint as to inequality or over-assessment of any particular piece of property in relation to other property in the county, but simply when the complaint is of a general nature and that all property appearing on the assessment roll is over-assessed.
There is a vast difference between equalization of assessments and making assessments. In the case of Merrell v. City of St. Petersburg, 64 Fla. 367, 60 So. 349, this Court held that the assessment must have a. fair relation to a uniform and equal rate but that the valuations need not be the same as those used for state taxation.
If, within a taxing district or within a county, the method of assessment is equal and uniform as to every piece of property in the district or county, and every property owner is treated alike, there is no inequality of assessment as to separate pieces of property in the district or county justifying equalization. The fact that while unimproved land in Franklin County may be assessed by a particular method in Franklin County, but is equal and uniform as to every piece of property and everyone is treated alike in that county, could have no effect upon a different method of assessment in Madison County, where the method employed in Madison County is equal and uniform as to every piece of property in Madison County. But, of course, all assessments must be made at full cash value as required by the statute. Sec. 193.11, Florida Statutes 1951 and F.S.Á.
For many years repeated efforts have been made at different sessions of the Legislature to create a State Tax Equaliza-tion Board, in an attempt to insure uniformity of-assessments as between various counties of the state. Each attempt has failed. We still have the principle that the method of assessment shall be equal and uniform for each piece of property in the taxing district. In this case the taxing district is Madison County.
Under the resolution adopted by the Board of County Commissioners each piece of property in Madison County would be required to be assessed the identical: sum on the 1953 Roll as that appearing on the 1952 Roll, without any consideration for changes in condition, or the character of the property, such as, homestead rights, fires, storms, demolition or improvement or new construction. The order does not provide for any equalization of any particular pieces of property within the county.
The case of Sanders v. Crapps, Fla., 45 So.2d 484, is cited as authority by the ap-pellees for the position which they take. The facts in that case are entirely different from the facts in the case at bar. In that case the owners of large tracts of land filed complaints in which they described their lands and complained of excessive valuations of the property so described for the year 1949. After a hearing, as provided by law, the Board of County Commissioners granted relief to the particular taxpayers upon their lands as described in the complaint. The Tax Assessor refused to comply. The alternative writ required the Assessor to extend the valuations upon the lands of the “relators-appellees” or to show cause. Peremptory writ issued notwithstanding the return requiring the County Assessor of Taxes to make the reduction on the particular pieces of property involved. In that case we did not have the question of reducing every piece of property in the county based upon complaints of a general nature.
The case of Hoffman v. Land, Fla., 55 So.2d 806, 807, is also cited by the appellees as sustaining their position. This case is similar to the case of Sanders v. Crapps, supra, and is not applicable in this case. In the case of Hoffman v. Land, supra, it ap *322 pears, “The land owners, parties to this litigation, appeared in person or by counsel and protested the valuations as being excessive as placed on lands for taxation purposes owned by each of them”. (Emphasis supplied.) The Court upheld the action of the Board of County Commissioners in granting relief to the individual taxpayers as to the assessments on lands owned by each of them. We have no situation in the case now before us.
Reversed, with directions to set aside the order granting the peremptory writ and to dismiss the cause.
ROBERTS, C. J., and THOMAS, SE-BRING and DREW, JJ., concur.
TERRELL, J., dissents.
HOBSON, J., not participating.