## STATE, ex rel. CHILEAN NITRATE SALES CORPORATION v. JONES, Tax Assessor.

Circuit Court, Escambia County.

March 17, 1961.

E. Dixie Beggs, Yonge, Beggs & Lane, Pensacola, for petitioner.

Philip D. Beall, Beall & Caro, Pensacola, for respondent.

ERNEST E. MASON, Circuit Judge.

Petitioner, Chilean Nitrate Sales Corporation, seeks by mandamus to require the tax assessor of Escambia County to reduce the valuation of its personal property on the tax rolls by the amount of $409,466.59, which amount it alleges in the petition for writ of mandamus was the value of nitrate of soda imports owned by it and stored on January 1, 1960 in a warehouse of the Pensacola Port Authority, and to fix the valuation of its personal property on said tax rolls at $11,324.95, which it alleges was the value of its personal property situate in Escambia County on that date subject to taxation by the county. The petition further alleges that the imports sought to be assessed by the tax assessor are constitutionally exempt from state and local taxation by virtue of the import-export clause of the United States constitution (art. 1, § 10, clause 2). Petitioner alleges that after the tax assessor assessed such imports it appealed to the board of county com-

missioners sitting as a board of equalization to review such assessment, and that the board revised and equalized petitioner's personal property assessment so fixed by the assessor by reducing its assessment to the value of its personal property ($11,324.95) not constitutionally exempt from taxation, and that the assessor has failed and refused to abide by the decision of the board of equalization, and has retained upon the tax roll for 1960 of the county such constitutionally exempt personal property.

The assessor has answered the alternative writ issued by this court upon the petition and in effect says that the action of the board of equalization was illegal, contending that the board has no power or authority to declare any property exempt from taxation, and that its action in reducing the assessment by the value of the claimed exemption was illegal and void. The assessor categorically denies that the nitrate of soda held the status of an import on January 1, 1960, so as to entitle the petitioner to the exemption claimed.

The evidence before the court on final hearing consists of a deposition of one Dewey Loper, agent of a stevedoring company which handled the nitrates of soda and potash for petitioner in the unloading of these nitrates from ships into the warehouses of the Pensacola Port Authority and the loading of same into railroad cars from such warehouses; extracts of minutes of the board of equalization reflecting its action in reducing the personal property assessment previously fixed by the assessor in an amount equal to the value of the nitrates claimed to be exempt from taxation; certified copy of letter from the board's clerk to the assessor advising him of the action of the board; and extract of the minutes of the board of the meeting at which the final tax roll, including the reduced personal property assessment of petitioner, was certified. Also received in evidence is a letter from the assessor to the petitioner's attorney dated after notification to him of the board's action in reducing petitioner's assessment advising in effect that he would not recognize the action of the board in reducing such assessment and insisting that the nitrates claimed to be exempt, and so held by the board, were not exempt from taxation for 1960, and would remain on the tax roll, the action of the board notwithstanding.

Two questions are raised by this suit. First, is the action of the board of equalization binding upon the assessor so as to obligate him to extend the personal property assessment of the petitioner upon the 1960 tax roll in the reduced amount as revised by the board? Second, are the nitrates in question constitutionally exempt from taxation for 1960 as contended by the petitioner and denied by the assessor?

To answer the first question it is necessary briefly to review the procedure fixed by the statutes of this state in assessing personal property for taxation. There are two general statutes dealing with this procedure, chapter 193, Florida Statutes 1959, and chapter 200, Florida Statutes 1959. Chapter 200 is later in point of time but neither expressly or impliedly repeals chapter 193, and the two must be construed in pari materia. The chief distinction between the two is that chapter 200 requires the assessment of tangible personal property on a roll separate from the roll of real property and that of intangible personal property.

Both statutes require the owner of tangible personal property in the county to return the same for taxation to the assessor on or before April 1st of each year (§ 193.12, § 200.08) and provide that the value of the same shall be fixed as of January 1st of such year (§ 193.11, § 200.021). All tangible personal property shall be assessed by the assessor at its full cash value. (§ 193.11, § 200.06). Section 200.15 requires the taxpayer to disclose in his sworn return for the year any claim of exemption from taxation to which he may be entitled in respect to taxable tangible personal property, and provides that any failure so to claim any such exemption will constitute a waiver of such claim for such tax year. (The petition herein alleges that petitioner filed a sworn return for the tax year 1960 and in it claimed the exemption herein contended for). The tax assessor is required to assess all tangible personal property in the county subject to taxation and to assess it at its full cash value according to his information and best judgment, determined both from sworn returns and independent investigation and study. (§ 193.13, § 200.14). If the assessor feels that the values of any personal property stated in the taxpayer's return is too low, or if he determines that the taxpayer has property subject to taxation which is not returned by him, the assessor is empowered to increase such value to the full cash value of the property and to include in his assessment such other property subject to taxation and not returned by the taxpayer, all after notice to and opportunity for a hearing by the taxpayer. (§ 193.13, § 200.10).

The assessor is required to complete the personal property assessment roll on or before June 1st of each year, but his failure to complete it by such date shall not invalidate the assessment. (§ 200.19). After the roll is completed the assessor is required to meet with the board of county commissioners sitting as a board of equalization for the purpose of hearing complaints and receiving testimony as to the valuations to be used in making tangible personal property assessments, and for the purpose of perfecting, reviewing and equalizing the assessments and valuations as shown

on the personal property tax assessment roll as prepared by the assessor, and to determine whether all taxable tangible personal property has been assessed on the roll for that year. (§ 193.25, § 200.19). Section 193.27 provides that the board of equalization may equalize the assessments, and for that purpose may raise or lower the value fixed by the assessor on any item of personal property. Section 200.20 provides that the board, for the purpose of reviewing, revising and equalizing the tangible personal property tax roll, may make such changes in valuations and assessments of tangible personal property, and may make such additions of taxable tangible personal property which have been omitted from the roll, as may be necessary to equalize the assessment and make the same fair and just.

After the board of equalization has reviewed and equalized the assessments first determined by the assessor, the roll is returned to the assessor, and after the board of county commissioners has fixed the millages for the various county purposes, the assessor is then charged with extending the roll by setting opposite each valuation of each item of property assessed the amount of tax charged against it. The board of county commissioners then is required to examine the roll so extended and to correct all mistakes and inaccuracies and to certify such roll as true and correct. (§ 193.29). Whereupon the assessor then transmits the assessment roll with his warrant to the tax collector for the collection of the taxes levied thereupon. (§ 193.30). Thus is completed the assessment process and the statutes provide that the county commissioners shall not thereafter have power to change any assessment. (§ 193.29, § 200.24).

Thus it is evident that in the process of assessment the role of the tax assessor of the county is to determine, in the first instance, what tangible personal property situate in the county as of January 1st is subject to taxation, and then to determine the full cash value of each item of the same. The determination, as the first step in the assessing process, of the taxability of any parcel or item of real or personal property is the province of the assessor, just as it is his province as a second step in the process of assessment to determine the valuation to be placed upon such property for purpose of taxation. In determining taxability and valuation before review by the county commissioners acting as a board of equalization, the assessor acts in a quasi-judicial capacity.

After the assessor has performed his duties in these respects then under the law of Florida, as delineated in the above quoted statutes, it becomes the duty and function and authority of the board of county commissioners sitting as a board of equalization

to review, upon the protest of a taxpayer, any particular assessment made by the assessor. The right of appeal to such board to review any decision of the assessor made by him in the process of determination of taxability and of valuation is specifically provided by the statutes; particularly § 200.10, as to personal property assessments. And if the taxpayer is dissatisfied with the decision of the board he may take an appeal therefrom to the circuit court of the county in which the property is assessed for taxes. (§ 200.10).

We have delineated the steps in the assessing process as prescribed by the Florida statutes with great detail, perhaps at the risk of being charged with prolixity, for the reason that by so doing the answer to the first question raised in this suit is more readily reached. This is true because it seems to be inherent in the position of the assessor as respondent herein that the board of county commissioners sitting as a board of equalization has no power to review and change his determination of the question of the taxability of property within the county. The record herein discloses that the assessor determined that the nitrates in question were subject to taxation because, in his opinion, they were not exempt. The petitioner taxpayer appealed from this decision to the board of equalization. The board of equalization overturned this decision of the assessor and advised him that they had, in the exercise of their power of review, determined that these nitrates were not subject to taxation because they were exempt under the constitution of the United States. The question is thus squarely posed, did the board of equalization in the exercise of the powers of review granted it in these statutes have the authority to set aside the decision of the assessor and reduce his assessment of petitioner's personal tangible property by the amount admitted to be the value of the property which the board determined was exempt from taxation?

This precise question has never been passed upon by the appellate courts of Florida. But the Supreme Court of Florida has decided the question as to the power of the board of equalization to bind the tax assessor by reducing real estate assessments initially made by him. In Sanders v. Crapps, Fla., 45 So. 2d 484, the assessor had initially placed valuations for assessment purposes upon several pieces of real property. The taxpayer owner of the property appealed to the board of county commissioners sitting as a board of equalization, complaining that the valuations as fixed by the assessor were excessive. The board, after a hearing at which the assessor was present as required by law, reduced the valuations as fixed by the assessor. The assessor refused to accept the assessments as revised by the board on the ground that

the assessments made by him were not excessive or discriminatory and that the board's were arbitrary and unreasonable. He thereupon refused to extend the valuations upon the tax roll of the county in accordance with the board's action. The taxpayer brought mandamus action against the assessor to require him to extend the tax roll in accordance with the revisions and reductions made by the board of equalization. The trial court issued a mandamus writ ordering the assessor to extend the tax roll in compliance with the board's action. He appealed, and the Supreme Court in affirming the trial court held that under the assessment statutes, above quoted, the board of county commissioners, sitting as a board of equalization, has authority to equalize assessments made by the assessor, and that the assessor could not refuse to extend valuations on the tax roll upon the taxpayer's lands in accordance with the equalization thereof as determined by the board of equalization on the ground that his valuations were correct and that the board had no power to reduce them. To like effect is Hoffman v. Land, Fla., 55 So. 2d 806, and Lee v. Booker & Co., Inc., Fla., 146 So. 546.

Each of the three cases cited dealt with the authority and power of the board of equalization in the matter of reducing valuations fixed by the assessor and were not concerned with the question of the power of the board to overturn the decision of the assessor on the matter of taxability of the property in the first instance. However, we see no difference in principle in the two situations. In each the initial responsibility is that of the assessor and in making his decision therein he acts in a quasi-judicial capacity, exercising a discretion. The Supreme Court has held, as we have seen, that the board of equalization has the power to reverse him in the matter of valuations, and when it does he must comply. His actions thereafter with reference to the tax roll are purely ministerial and he cannot by failing to perform his ministerial duty nullify the action of the board of equalization. If he must comply with the board's decision on the issue of valuation, we are conscious of no reason why he should not be required to comply with its decision on the issue of taxability. Section 200.10 gives the taxpayer the right of appeal to the board of equalization "from any decision" of the assessor made under that section. One of the decisions that the assessor must make under that section is the taxability of the taxpayer's property, and when he makes a decision on this question adverse to the taxpayer the latter may appeal the same to the board of equalization. Then it becomes the duty and function of the board, in the exercise of its power of review, to perfect, review, revise and equalize the *assessment* and *valuation* under the statute. (See §§ 200.19 and 200.20, Florida Statutes 1959, also § 193.25).

The Supreme Court having held that in the exercise of its power of review the board of equalization may reduce valuations, and that the assessor is bound thereby, it would be incongruous indeed to conclude that such board may not in the exercise of its specific power to perfect, revise and equalize "assessments and valuations" determine that the property was not subject to taxation in the first place. If it may review the act of evaluation, which is but a part of the assessing process, certainly it may review a decision of the assessor concerning the taxibility of the thing evaluated, the latter being also a necessary part of the assessing process. The board of equalization is given the power by the statutes to review not only valuations fixed by the assessor but also the assessments made by him. (§§ 193.25, 200.19, 200.20). The term "assessment" is a broader term than "valuation" and includes it. It embraces the act of selecting persons and property subject to taxation and the official valuation, appraisal, or estimate of value of the property so subject. (84 C.J.S., p. 746). Therefore, the board of equalization being empowered by statutes to review assessments it follows that it may review the act of the assessor in determining that particular items of personal property are subject to and not exempt from taxation. The respondent herein having determined that the nitrates in question were subject to taxation and not exempt, the board acted within its province of review in over-ruling him and holding the property exempt. It having done so it then became his duty to comply with its decision by extending the tax roll as it affects petitioner's tangible personal property in the manner directed to effectuate the board's decision.

Although the Florida appellate courts have not decided this precise question, the appellate courts of other states have and such holdings are persuasive authority for our conclusion herein. (See Forrester v. Pullman Co. Ga., 15 S.E. 2d 185; Copp v. State, W. Va., 71 S. E. 580).

We therefore hold that the petitioner is entitled to a peremptory writ requiring the respondent tax assessor to extend the tangible personal property roll as prayed for by petitioner. In so holding we do not mean to infer that any taxpayer who may consider himself aggrieved by the board's action may not, in a proper case, raise this same question which respondent tax assessor has raised herein.

And having answered the first question presented by this action in the affirmative it is not necessary for the court to answer the question as to whether the property involved was in fact exempt from taxation on January 1st, 1960, and we do not decide that question. We leave it to future action by the tax assessor and

board of equalization to determine this question for tax years subsequent to 1960.

A peremptory writ will issue in accordance with this opinion.