**STATE, ex rel. GLYNN v. McNAYR, et al.**
No. 61 L 2784.

Circuit Court, Dade County.
August 5, 1961.

Sibley, Grusmark, Barkdull & King, Miami Beach, for petitioners.

Darrey A. Davis, County Attorney, for respondents.

PHILLIP GOLDMAN, Circuit Judge.

An alternative writ of mandamus was issued directed to the respondents to show cause why they should not submit to the county commissioners of Dade County, with all convenient speed, a tax roll predicated upon the reassessment program of valuations of all the real and personal property in Dade County. A return to the alternative writ, and relators' reply thereto, were in due course filed.

It is therefore apparent that the matter is before the court solely on the issues arising from the aforementioned pleadings, the evidence relevant and material to these issues, and the law applicable thereto.

It is elementary that mandamus is an original proceeding to enforce *a clear legal right* to the performance of *a clear and indisputable legal duty*. State ex rel. Eichenbaum v. Cochran, Fla., 114 So. 2d 797, 800. Unlike many other proceedings, its purpose is not to establish a legal right, but to enforce one that has already been clearly established. Curtis v. Miami Beach, Fla., 46 So. 2d 24, 21 Fla. Jur., Mandamus §4, p. 316. Hence, the only "substantive question" before the court is whether or not (within the confines of a mandamus proceeding) the respondents have a clear and

indisputable legal duty and the relators have a clear right to have the valuations arrived at under the reassessment program (which program was incomplete[1] when abandoned) transposed into a 1961 tax assessment roll and submitted to the Dade County board of county commissioners as the board of equalization.

To determine this it is necessary to construe certain controlling provisions of the Florida constitution, as well as certain general statutes of the state, and such pertinent provisions of the charter of Metropolitan Dade County as are not in conflict with the constitution or general statutes (art. VIII, section 11, subsection (6) and (9), Florida constitution).

Section 1, article IX of the Florida constitution states that the "Legislature shall provide for a uniform and equal rate of taxation," with certain exceptions. Section 5 of article IX provides that the "Legislature shall authorize the several counties * * * to assess and impose taxes for county * * * purposes, and for no other purposes, and all property shall be taxed upon the principles established for State taxation." When sections 1 and 5 of article IX of the constitution are read together, as they should be, it is plain that the legislature was empowered to authorize counties uniformly and equally to impose taxes on all (non-exempt) property. Although ad valorem taxes on real property are no longer levied by the state, it is necessary to refer to section 1 of article IX to determine the "principles" governing the imposition of taxes under section 5 of article IX. By the former section, the legislature was mandated to "prescribe such regulations as [should] secure a just valuation of all property, both real and personal, excepting such property as [might] be exempted by law."

In fine, the rate of taxation was required to be *uniform* and *equal* and the valuation to be *just*.

The constitution (article VIII, section 6) goes on to provide for a "county assessor of taxes" whose powers and duties shall be prescribed by law. (The respondent county manager, pursuant to section 8.01 of Dade County's home rule charter, as authorized by article VIII, section 11(1)(f) of the constitution, inherited the powers and functions of that office.)

---

1. The respondent O'Connor testified that a review of the cards on each of the 318,000 parcels of land in Dade County was an "absolutely necessary" part of the "reassessment program" and this was about 50 per cent completed when the program was halted. In addition, the personal property phase of the "reassessment program" was not completed, *if* it was ever started.

The legislature has so done. He is, for example, required to make a personal inspection, unless he is acquainted with the land, and determine the value of each piece of property in the county from his personal inspections, experience and other available information. Section 193.11, Florida Statutes, sets forth the procedure to be followed by the *county assessor of taxes* in assessing real and personal property, and includes the requirement — "The *county assessor of taxes* shall assess all property at its *full cash value*. The assessment of tangible personal property shall be made separate from the assessment of real estate." (Italics added.)

There is no question about this requirement, Armstrong v. State ex rel. Beaty, Fla., 69 So. 2d 319, State ex rel. Kent Corporation v. Board of County Commissioners of Broward County, 160 Fla. 900, 37 So. 2d 252. Nor is there any question but what "full cash value" does not lend itself to "certainty". This fact has resulted in considerable leeway being granted the official whose duty it is to make assessments. Cf. Schleman v. Connecticut General Life Insurance Co., 151 Fla. 96, 9 So. 2d 197, 200. In fact, absent arbitrary and capricious action on the part of the county assessor of taxes, his discretion or judgment will not be disturbed. State ex rel. Kent Corporation v. Board of County Commissioners of Broward County, supra.

The law is equally clear that the "full cash value" requirement in tax assessing is addressed to each *separate* parcel, and not to the *aggregate* of all parcels in the taxing unit.

It is also worthy of note that, at a bare minimum, the *statutory* requirement of "full cash value" in tax assessing is of no greater dignity than the *constitutional* requirements of "equality" and "uniformity." Cf. State ex rel. Attorney General v. City of Avon Park, 108 Fla. 641, 149 So. 409, at 416, and Sanders v. Crapps, Fla., 45 So. 2d 484, at 487. The importance of these observations will, in due course, become quite apparent.

Without more, of course, this cause would in principle be no different from State ex rel. Kent v. Board of County Commissioners of Broward County, supra. Relators, however, invite the court's attention to the provisions of section 193.111, Florida Statutes, subsections (1) and (3) of which read — "(1) *The boards of county commissioners* of each *of the several counties* of the state, be, and they *are hereby authorized and empowered to cause to be made* by a company or board of appraisers to be selected by the board of county commissioners, *an appraisement of all property in such county.* * * * (3) The original of said appraisement shall be deposited with the tax assessor of such county and a duplicate thereof shall be deposited in the office of the board of county commissioner." * * * (Italics added.)

There can be no question but what relators build their case around this statute. Immediately after quoting the statute in their brief, they state "This section granted to the board of county commissioners of the several counties of the state of Florida, including the county commission of Dade County, the power and authority to employ appraisers for the purpose of ascertaining the full cash value of all property within the taxing unit. *Pursuant to the authority granted by this section[2] the county commission of Dade County adopted an ordinance appointing appraisers to appraise the full cash value of each and every parcel of property within Dade County.* This appraisal board concluded its work prior to January 1, 1961, and delivered to the tax assessor their administrative findings which fixed the full cash value of all taxable property within Dade County." (Italics added.) Paragraph VII of relators' petition (incorporated into the alternative writ) is to the same effect.

Their contention, in essence, is that the county assessor of taxes and his chief assistant (respondents here) are under a clear and indisputable legal duty to accept the valuations resulting from this reassessment program and prepare the 1961 roll on the basis of this program.

This contention fails to recognize the distinction between annual assessments, on the one hand, which are the responsibility of the constitutional county assessor of taxes of the several counties, and reassessment or reappraisal programs, on the other hand, which are the responsibility of "The boards of county commissioners of each of the several counties. . ." (section 193.11, F.S.).

Assuming (although, as previously noted, the undisputed evidence is to the contrary) that the entire reassessment program had been completed prior to its being halted on June 8, 1961, the court finds that respondents, as the constitutional tax assessing officials of the county, were not under any clear and indisputable duty to accept these valuations, which resulted from a board of county commissioners' reappraisal program pursuant (as relators contend) to section 193.111, F.S. In fact, the rationale of Armstrong v. State ex rel. Beaty, supra, cited by relators, supports the court's conclusion. Cf. Foulk v. Florida Real Estate Commission, Fla. App., 113 So.2d 714, at 716.

---

2. Conceivably one might disagree as to whether or not this is the section that the board of county commissioners of Dade County proceeded under. However, it is an applicable general statute, and since relators have chosen it, the court, at least for purposes of this lawsuit, shall proceed on the basis that relators are correct.

Moreover, in opinion no. 057-3, dated January 4, 1957 (1957-58 A.G.O., p. 2) the Attorney General of Florida, without the pressure of pending litigation, pointed out — "Section 193.111, F.S., seems to treat county-wide appraisements thereunder as a county project and not one of the assessor of taxes. Although the original of the appraisement is required to be filed in the office of the county assessor of taxes, we find nothing in the statute which requires the assessor of taxes to use or be bound by the said appraisement. Doubtless the county assessor of taxes has the power and authority, when the income of his office will permit same, to make a complete revaluation of all taxable property in the county in connection with his assessment duties unconnected with said §193.111, F.S."

And, again on June 26, 1958, in opinion no. 058-199 (1957-58 A.G.O., p. 737) the Attorney General said[3] — "In A.G.O. 057-3 it is noted that said section treats countywide appraisals thereunder, as a county project and not one of the assessor of taxes. Although the original of the appraisement is required to be filed in the office of county assessor of taxes we find nothing in the statute which requires the assessor of taxes to use or be bound by the said appraisement."

Even, assuming that these opinions of the Attorney General are ultimately discarded by an appellate court, their presently unchallenged existence would seem to preclude any judicial determination that respondents are under a presently existing clear legal duty to accept at face value as their assessment, valuations arrived at pursuant to a section 193.111 program.

This is especially so when, upon a review of that program, respondents, as alleged in their return, and testified to under oath, were of the judgment that the "reappraisal" or "reassessment" valuations were so patently defective and inaccurate as to violate the constitutional requirements that the rate of taxation shall be uniform and equal and the valuation of property shall be just. As earlier noted, it is not enough that the projected reassessment valuations *in the aggregate* more nearly approach the *aggregate* full cash value of all property in the county.

There is little to be gained by detailing the procedures employed in the reassessment program. Perhaps a competent plan was originally devised. Perhaps, as respondents contend, it was a lack

---

3. While opinions of the Attorney General are not judicial utterances, they are entitled to considerable weight in construing Florida statutes; *particularly those statutes relating to the performance of duties by public officials.* See generally 3 Fla. Jur., Attorney General, §7, p. 327.

of time that caused the plan to break down. Without attempting to fix responsibility or determine the cause, suffice it to say that under the program not *one single solitary parcel of taxable real property in Dade County was actually appraised by a person qualified to do so.* The so-called reappraisal valuations represented *neither the judgment of the tax assessor nor the judgment of the qualified members of the appraisal board,* but represented the judgment of various and sundry untrained and unqualified clerical personnel. The evidence on this point is undisputed.

It is, of course, true that several of the qualified professional appraisers (who met from time to time in various offices where they compiled a pricing manual and established "land value patterns") didn't think the job was too bad considering all the circumstances and limitations. However, it is highly significant that these witnesses,[4] in response to inquiry by the court, would not put their names on (or testify with respect to) any appraisal of a specific parcel of property for a private client, or a condemning authority,[5] using these procedures. Accuracy is no less desirable in one instance than in the other.

The respondent McNayr, charged with the duties of the county assessor of taxes, testified (and it stands uncontradicted) that his office had received in excess of 200,000 bitter complaints about the program. Having listened to the evidence, the court is surprised that there were not more.

Relators, however, echoing the testimony of one of their witnesses, urge that respondents should not have allowed the hue and cry of the taxpayers to deter them. It is argued that since the imposition of taxes is always unpopular, there will always be a hue and cry. This argument is not only unacceptable, it is a little frightening.

Admittedly taxes are unpopular and the court is willing to assume that there will be a hue and cry when a fair and equitable "reassessment program" is ultimately accomplished (as the respondent McNayr testified will be done). But that fact does not warrant responsible officials deliberately using projected reassessment valuations which they in good faith believe (with

---

4. Only one actually testified on this point but the court was advised that the testimony of the others would be substantially the same.

5. It is not necessary to decide whether the valuation standards of "full" or "just" compensation (Declaration of Rights, §12 and art. XVI, §29, constitution of Florida), on the one hand, and "full cash value", on the other hand, are the same. But see, 1949-50 A.G.O. 233, opinion no. 050-351, July 21, 1950, for an interesting discussion of the subject.

substantial evidentiary support) to be patently defective and unsound. It is as reasonable to argue that, since prison is still prison, regardless of whether one is convicted and sentenced by civilized processes or not, we might just as well do away with the requirements of due process of law.

It is, of course, not the purpose of mandamus to impose the will of the relators upon an official vested with discretion in the conduct of his office. Respondents are here vested with such discretion and in the absence of arbitrary or capricious action on their part, mandamus will not lie.

On the basis of all the evidence, the court is unable to conclude that the respondents were guilty of arbitrary and capricious action. Respondent McNayr's judgment that it is "essential that a physical check be made by competent people on each piece of property to be appraised in an area" is certainly neither arbitrary nor capricious and finds overwhelming support in the record; including (but not limited to) support from a former Dade County assessor of taxes, called as a witness by the relators.

The alternative writ of mandamus must be discharged for still another reason.

As previously noted, it commands the respondents to submit to the Dade County board of county commissioners, sitting as a board of equalization, a new 1961 tax assessment roll for Dade County reflecting the valuations arrived at under the reassessment program.

The return to such alternative writ alleges — "14. The respondents say that it is not within their power, and it would be physically impossible, at this late date to compile and make up a completely new 1961 tax assessment roll based upon the reassessment valuations, and to complete such new assessment roll and cause the same to be equalized by the county commission as the board of equalization (particularly in view of the tremendous number of complaints and objections to be reviewed and heard by the tax assessor and the board of equalization), and to extend the tax assessment roll to show the millages and amounts of taxes for the county, the school board and flood control district, and to deliver such tax roll to the county commission for certification, by October 2, 1961." The evidence amply supports these allegations and they constitute a good defense to the writ.

The general rule is stated in 21 Fla. Jur., Mandamus, §11, p. 321-322, as follows — "Mandamus is predicated on the existence of a legal duty imposed by law on the respondent. The

duty whose enforcement is sought must be one that the respondent can perform. Mandamus will not lie to compel the performance of an act that is beyond the physical, mental, or financial power of the respondent, or that would exceed his legal authority. This is true notwithstanding the fact that the respondent officer may have put it out of his power to perform the duty requested and may be liable in damages on that account." See also, County Commissioners of Duval County v. City of Jacksonville, 36 Fla. 196, 18 So. 339; State ex rel. Peck v. Bowden, 18 Fla. 17; State ex rel. Burr v. Tavares & G. R. Co., 78 Fla. 329, 82 So. 833; State ex rel. Titus v. Peacock, 125 Fla. 452, 170 So. 127; Board of Public Instruction of Lafayette County v. State ex rel. Taylor, 156 Fla. 708, 24 So.2d 99. See generally, 4 U. Fla. L. Rev., Mandamus in Florida, 535, 539.

Considering the evidence on this issue in the light most favorable to the relators, it shows that respondents would exert their best efforts toward compliance. That is not enough. See generally, 21 Fla. Jur., Mandamus, §§36 and 125. See also, Carson, Florida Common Law Pleading, Practice and Procedure, Mandamus, p. 305, which states — "Where a peremptory writ has issued, the only legitimate answer to it is that of compliance with its command *ad litteram*. Any other answer is in contempt of court. As evidence of such performance a certificate showing the doing of the acts commanded to be done is the only permissible return."

It is therefore apparent that a peremptory writ cannot, or definitely should not, issue upon the basis of evidence of what the respondents may be able to do or what they will make their best efforts to do.

The court having considered the pleadings, the evidence submitted, as well as the very excellent briefs and argument of counsel, is satisfied that the peremptory writ of mandamus should not issue.

In the hope of minimizing any misconceptions which may have arisen as to the scope of this cause, the court in closing wishes to make it abundantly clear that it has not intended by any ruling made at the trial, by any comment from the bench, or by any isolated excerpt from this opinion and judgment, to determine or resolve any issues except those inextricably involved in the court's determination that a peremptory writ of mandamus should not issue, that the alternative writ heretofore issued should be discharged and that the petition, upon which the writ was founded, should be dismissed.

It is accordingly ordered and adjudged as follows — (1) Relators' prayer for a peremptory writ of mandamus is denied. (2) The alternative writ of mandamus heretofore issued by the court is discharged and quashed. (3) Relators' petition for a writ of mandamus is dismissed. (4) Relators and respondents shall each bear their respective costs.